Cleora **COOPER**, individually and on behalf of her minor children, Julius Williams and Darryl Cooper, Marie Hicks, individually and on behalf of her minor children, Eric Hicks and Tramel Hicks, Hazel Chance, individually and on behalf of her minor children, Benita Chance, Benjamin Chance, Ronne Chance, and Anthony Chance, Nancy Bullett, individually and on behalf of her minor children, Caroline Denise Bullett, Paul Bullett, Ave Marie Bullett, Andre Bullett, and Machael Bullett, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Alfred J. **LAUPHEIMER**, Sr., et al., Defendants.

Civ. A. No. 69–2421.

United States District Court, E. D. Pennsylvania.

April 16, 1970.

Douglas G. Dye, Philadelphia, Jonathan M. Stein, Charles H. Baron, and Harvey N. Schmidt, Community Legal Services, Inc., Philadelphia, for plaintiffs.

William C. Sennett, Atty. Gen. of Pa., Joseph P. Work, Deputy Atty. Gen., and Jacques H. Fox, Asst. Atty. Gen., for defendants.

Before HASTIE and GANEY, Circuit Judges, and WRIGHT, District Judge.

## OPINION

WRIGHT, District Judge.

### I.

This is a class action for declaratory and injunctive relief under the Civil Rights Act, 42 U.S.C. § 1983.[1] Plaintiffs attack the constitutionality of statewide regulations[2] of the Pennsylvania Department of Public Welfare, thereby invoking the provisions of 28 U.S.C. §§ 2281, 2284, and this three-judge court was convened. Jurisdiction for declaratory relief is proper under 28 U.S.C. §§ 2201, 2202, as it is for violation of the Civil Rights Act under 28 U.S.C. § 1343(3), (4).

The challenged regulations compel reduction, without prior hearing, of current grants under the Aid to Families with Dependent Children ("AFDC") program to exact restitution of alleged

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

2. Plaintiffs specifically attack the validity of the following regulations of the Department of Public Welfare: Pa.Pub. Assistance Manual §§ 3641–3647, 3810–3817 and Public Assistance Memorandum No. 1068 and Supplement 1 thereto (incorporated into Manual as section 3641.-141). The regulation centrally at issue is section 3641.141 of the Manual which provides:

"As soon as it has been learned that a recipient has received a duplicate payment, the amount of the overpayment is recovered by a reduction in the current grant for which the recipient is eligible. The full amount of the overpayment is adjusted to the monthly Total Allowance (PA 21–P) for two payment periods unless the amount so adjusted would result in discontinuing assistance. In the latter event, the adjustment may, if the client wishes, be extended over four semi-monthly payment periods; i. e., one half of the overpayment is adjusted for each of the two months. If the adjustment is insufficient to cover the total amount of the overpayment, a Referral for Restitution or Prosecution, PA 189, is prepared by the County Office for the unpaid amount and submitted to the Claim Settlement Area Office."

Plaintiffs also challenge the validity of the state statutes under which the above regulations were promulgated: 62 Purd. Stat. §§ 403, 419, 481 and 72 Purd.Stat. § 1602.

duplicate payments. Plaintiffs assert that the regulations violate the equal protection and due process clauses of the fourteenth amendment and contravene the provisions of Subchapter IV of the Social Security Act, 42 U.S.C. § 601 et seq. Plaintiffs also assert that the regulations, as applied, violate their fifth amendment right against compulsory self-incrimination in that officials force recipients by threat of grant termination to admit in writing receipt and endorsement of duplicate checks, a possible criminal offense.[3]

Plaintiffs are mothers of minor children receiving grants under the AFDC program. The action is brought individually, on behalf of the children, and as a class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure on behalf of all others similarly situated. Defendants, who are sued in both individual and official capacities, are the Philadelphia Board of Assistance, its members and Executive Director, the Secretary of the Department of Public Welfare, the Director of the Bureau of Investigation of the Office of the State Treasurer, the State Treasurer, and the State Attorney General.

■ This court need not determine whether plaintiffs have exhausted administrative remedies prior to filing this action because the constitutional challenge under 42 U.S.C. § 1983 is sufficiently substantial to require the convening of a three-judge court. King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1967); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

By stipulation of the parties filed with the clerk of this court, this action was submitted on depositions, documents, exhibits and arguments by the parties.

II.

The Commonwealth of Pennsylvania participates, on a matching fund basis, in the federal AFDC program, established by the Social Security Act of 1935, 42 U.S.C. § 601 et seq. In order to receive federal funds, a state is required to submit for approval by the Secretary of Health, Education and Welfare ("HEW") a "State plan" which complies with the requirements of the Social Security Act and HEW regulations. 42 U.S.C. §§ 601–604. Under the Pennsylvania Public Welfare Code, the Department of Public Welfare ("Department") is charged with the duty of receiving and supervising the disbursement of federal funds. 62 Purd.Stat § 406(1).

AFDC grants in Pennsylvania are set at a subsistence level and supply only a family's most fundamental needs. No allowance is made for furniture, telephone or full clothing needs.[4] Recog-

---

3. 62 Purd.Stat. § 481 provides:

"(a) Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a wilfully false statement or misrepresentation, or by impersonation or other fraudulent means, secures, or attempts to secure, or aids or abets any person in securing assistance under this article shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or to undergo imprisonment not exceeding one year, or both, and also shall be sentenced to make restitution of any moneys he has received by reason of any such false statement, misrepresentation, impersonation, or fraudulent means.

(b) Any person who, either prior to or at the time of or subsequent to the application for assistance, by means of a wilfully false statement or misrepresentation, or by impersonation, or other fraudulent means, secures or attempts to secure assistance not exceeding three hundred dollars ($300) under this article shall, upon conviction thereof in a summary proceeding, be sentenced to make restitution of such assistance, and to pay a fine of not more than two hundred dollars ($200), and, in default of making restitution and payment of the fine imposed, to undergo imprisonment not exceeding sixty days."

4. Deposition of Elias Cohen, Commissioner of the Office of Family Services of the Pennsylvania Department of Public Welfare, taken on December 16, 1969, at 34–37.

nizing that a lost, stolen or delayed check may cause severe deprivation to a family receiving AFDC payments, the Department provides that emergency checks can be obtained through county boards of assistance. Pa.Pub.Assistance Manual ("Manual"), section 3214. Reports of checks lost, stolen or not received are investigated by the State Treasurer's Office pursuant to 72 Purd. Stat. § 1602 and Manual, sections 3641, 3643.

A duplicate payment is a form of overpayment which results when a recipient gets two assistance checks covering the same time period. This situation arises when a recipient reports the loss, theft or nonreceipt of a regular check, obtains an emergency check, subsequently finds or receives the regular check, and fails to return it. Manual, section 3214. The recipient may have acted from innocent mistake, or with fraudulent intent. In other cases, what may be mistaken for a duplicate payment occurs when the original check is stolen and the endorsement forged by the thief, who cashes the check.

Prior to July 1, 1969, the Department sought restitution for duplicate assistance payments only in cases of suspected fraud,[5] pursuant to Manual, section 3810 et seq., and actual restitution was geared to the ability to pay, Manual, section 3816.11(b). A person currently receiving assistance was considered unable to pay and failure to make immediate restitution was not an eligibility factor for continued receipt of assistance. Manual, section 3816.11(c), (e). On July 1, 1969,

the Department instituted a new regulation[6] which ordered that restitution of duplicate assistance payments, whether procured through fraud or mistake, be accomplished by reducing the current grant to the entire family by at least fifty percent of the semi-monthly grant. The regulation was amended, effective August 11, 1969, to provide that the full amount subject to restitution must be taken from one month's checks, or if complete discontinuance of aid would result, from two consecutive month's checks.[7] If the full amount is still not recovered, the Department resorts to the regular methods outlined above.

Plaintiffs are duly qualified and eligible recipients of AFDC grants and were receiving semi-monthly payments from the Department at the time in issue. After they failed to receive their regular checks on time, they obtained emergency replacement checks by signing a form which authorized investigation of the unreceived checks by the Treasurer's Office.[8] Several months later plaintiffs were summoned to the Treasurer's Office under penalty of suspension of assistance for failure to appear and were shown endorsed, duplicate checks.

Plaintiff Chance swore that she never received the regular check for which she obtained the replacement and denied that the endorsement of the original check was hers. Plaintiff Bullett avers that she never remembers getting the original check or any extra check. Plaintiffs Cooper and Hicks swore that they had not received their regular checks when

---

5. Manual, section 3810 provides, in pertinent part:
    "A suspicion of fraud exists when a person is believed to have knowingly and deliberately withheld information or provided incorrect information to obtain assistance for which he would otherwise not be eligible. Only the Court has jurisdiction to convict for fraud. Under the Public Assistance Law [Section 13], obtaining, or aiding or abetting a person in obtaining assistance by means of a wilfully false statement or misrepresentation, or by impersonation, or other fraudulent

means, is a misdemeanor. A person convicted of fraud under this law must be sentenced to make restitution of the money received by virtue of his fraudulent acts and, in addition, is subject to fine and/or imprisonment."
    *See also* Manual, section 3812.1.

6. Pa.Public Assistance Manual, Memorandum No. 1068.

7. Pa.Pub.Assistance Manual, Memorandum No. 1068, Supplement 1, now incorporated into Manual as section 3641.141. *See* note 2, *supra.*

8. Manual, section 3641 and subdivisions.

they applied for replacements and never intended to defraud the Department, although they conceded that the endorsements appeared to be theirs. Plaintiffs signed forms withdrawing their claims of nonreceipt of the proceeds, after they were threatened with suspension of all assistance if they refused to sign. Subsequently, plaintiff Bullett's semi-monthly checks were reduced and plaintiffs Hicks and Chance were notified that their future checks would be reduced by the amount of duplicate payments they had admitted they received.

### III.

For reasons which will become apparent, this court finds it unnecessary to reach the constitutional issues raised by the complaint. Accordingly, we limit our inquiry and decision to one issue: whether the method which Pennsylvania has selected to recover extra AFDC payments is inconsistent with the provisions of Subchapter IV of the Social Security Act. An examination of the purposes and requirements of the Act is therefore necessary.

The AFDC program was created by Congress:

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the

parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection. * * * "[9]

The paramount goal of the program is the protection of the needy,[10] dependent[11] child. King v. Smith, supra, at 313, 88 S.Ct. 2128, 20 L.Ed.2d 1118. By accepting federal funds,[12] Pennsylvania assumed the duty "that aid to dependent children shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a) (10) (Supp. IV, 1969). This duty is breached if an otherwise eligible child is deprived of AFDC funds because of parental misconduct. On this basis, among others, the Supreme Court invalidated an Alabama regulation which denied AFDC payments to the children because the mother cohabited with an able-bodied man, not her husband, King v. Smith, *supra,* and a three-judge district court struck down a Connecticut regulation which terminated AFDC grants to illegitimate children because their mother refused to disclose the name of the children's father, Doe v. Shapiro, 302 F. Supp. 761 (D.Conn. 1969). Similarly, in Evans v. Houston, No. 105,519 (Mich. Cir.Ct., Wayne County, Jan. 30, 1969),[13] a state court found that the cancellation of AFDC payments because a recipient

---

9. 42 U.S.C. § 601.

10. Congress has delegated to the States the power to determine what children are needy for purposes of the AFDC program. *See* King v. Smith, *supra,* 392 U.S. at 318 n. 14, 88 S.Ct. 2128, 20 L.Ed.2d 1118.

11. A dependent child is statutorily defined as:
    "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle,

aunt, first cousin, nephew or niece, in a place or residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and * * * a student. * * * "
42 U.S.C. § 606(a).

12. HEW may entirely or partially terminate federal payments if the state fails to comply substantially with the requirements of section 602(a). 42 U.S.C. § 604 (a) (2).

13. Reported in CCH Poverty Law Reports, ¶ 9615 at 10,764 (1969).

failed to pay restitution, ordered by a court after her conviction for welfare fraud, conflicted with the purpose of the Social Security Act by penalizing the children for the actions of the parent.

■ The Pennsylvania regulation is inconsistent with the Social Security Act for the same reason: it punishes the child by depriving him of a substantial portion of AFDC assistance which he is eligible to receive because his mother mistakenly or fraudulently obtained an extra payment months ago. The state has a legal right to recover from the mother funds which she was not entitled to receive but it cannot recover these funds by reducing current assistance to the child. The target and primary beneficiary of AFDC aid is the child; the mother is merely the conduit through which the funds are channeled to the child. The Pennsylvania regulation does not exact restitution solely from the mother's share because no specific percentage of an AFDC grant is designated for the mother's sole benefit. Thus, the money withheld from the current grant is withheld from the eligible child, in breach of the duty imposed by section 602 (a) (10).

■ Furthermore, the regulation is repugnant to the provisions of the Act in its total disregard of the concept of need. Congress established only two prerequisites for eligibility: need and dependency. The Pennsylvania regulation must be measured against these criteria, even though it deals with reduction of aid rather than conditions of eligibility, because it was the intent of Congress that need and dependency be the only two conditions restricting receipt of AFDC grants. While each state is free, under the statute, to set its own standards of need and to determine the level of benefits to be administered, the Pennsylvania regulation ignores the Department's own prior determination that the family is in need and that a specified amount of semi-monthly aid must be provided to meet those needs. The regulation arbitrarily directs that the duplicate payment must be recovered by pro-

portionate reductions in two or four consecutive payments, regardless of how little remains to satisfy the family's needs.

■ It does not suffice to say, as defendants suggest, that the state has not breached its duty to provide financial assistance because the child presumably has received the benefit of a duplicate payment mistakenly granted at an earlier time. That Pennsylvania did provide extra aid months ago, which it now seeks to credit against the grant presently due, fails to recognize the reality of public welfare—the necessity of current payments for current needs. The state has a duty to see that the child's current needs are met. It cannot avoid this responsibility by arguing that it has fulfilled a past need.

The Pennsylvania regulation cannot be reconciled with the Social Security Act unless it can be presumed that the mother still has the extra payment in her possession to cover the amount of the reduction. However, no basis for such a presumption has been established. In view of the subsistence level of AFDC payments in Pennsylvania, it would be unreasonable to presume that a mother, who must strive to supply her family with the basic necessities of life, would maintain a cash reserve.

■ Furthermore, the state cannot justify its method of restitution by asserting that proper management of funds would produce such a reserve. The state cannot permit a child to starve or be deprived of aid that he needs because of the mother's budgetary mismanagement. The Social Security Act specifies remedies for such a situation: the state may provide guidance and counseling services regarding the proper use and management of AFDC funds, 42 U.S.C. § 605; it may provide for protective payments, 42 U.S.C. § 606(b) (2); it may appoint a guardian or legal representative to receive and manage the funds for the child, 42 U.S.C. § 1311; or it may remove a child from a home upon a judicial determination that the

parent is not using the funds for the benefit of the child, 42 U.S.C. §§ 605, 608(a) (1). Only if the state provides other care and assistance can it withhold AFDC aid from a needy, dependent child. 42 U.S.C. § 604(b).

Defendants urge, however, that the regulation fulfills the purpose of the Social Security Act because the state must preserve its limited AFDC fund so that each eligible recipient may receive the assistance to which he is entitled. This argument is not compelling. At issue is not the legitimacy of the state's interest in preserving its funds, protecting all welfare recipients or recovering money rightfully due; at issue is the validity of the methods which the state employs to achieve these admittedly valid goals.

Pennsylvania has at its disposal methods, consistent with the Social Security Act, by which it can recover excess payments. It may institute criminal prosecution against a recipient who has fraudulently obtained a duplicate payment and, upon conviction, obtain restitution, a fine and/or imprisonment. It may also file a civil action, obtain a judgment, and satisfy the judgment when the recipient is able to pay. The state may not, however, seek to protect its interests by a method which violates the Act when it has available other legitimate means.

Nor can the regulation be upheld on the ground that immediate restitution through reductions in current AFDC grants is the only method of insuring that there are sufficient funds to provide for all welfare recipients. The record does not support defendants' argument that existing civil and criminal remedies, which delay actual recovery, are ineffective because AFDC funds will be so diminished in the interim by the number of people obtaining duplicate payments that other recipients will be deprived of assistance.

Finally, defendants submit that the regulation is in harmony with the Social Security Act because recoupment of overpayments from subsequent grants is recognized as a valid method of adjustment in another chapter of the Act.[14] This argument is without merit. In prescribing this method of recoupment, Congress specifically limited its application to the provisions of the "Federal Old-Age, Survivors, and Disability Insurance Benefits" subchapter of the Social Security Act. No comparable provisions were inserted into the AFDC subchapter of the Act. In view of these facts and the completely different purposes to be served by the two subchapters, it cannot reasonably be inferred that Congress intended that overpayments of AFDC assistance be adjusted by recoupment from subsequent grants.

## IV.

Since the challenged regulation is inconsistent with the statutory requirement that AFDC assistance be furnished with reasonable promptness to all eligible individuals, the Pennsylvania regulation is void and may no longer be enforced. Accordingly, it is ordered that defendants be enjoined from seeking restitution of duplicate assistance payments by reducing current grants of AFDC aid to plaintiffs and their class.

It is unnecessary to decide the constitutional questions raised regarding the procedures by which the regulation is implemented in view of our holding that the regulation itself is invalid.

The parties will submit a proposed order in accordance with the terms of this opinion.

14. 42 U.S.C. § 404(a) (Supp. IV, 1969) provides in pertinent part:
"Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person *under this subchapter*, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows. * * *" (emphasis added).