John R. Tenney, J.
Plaintiff has moved for summary judgment in an action brought against the defendant seeking a determination that his recent amendment of 18 NYCEE 369.1 is illegal, and therefore void. It is stipulated by both parties that there are no issues of fact involved, and that the court has jurisdiction to determine this matter.
On August 5, 1970, defendant George K. Wyman, as Commissioner of the Department of Social Services, by promulgation, amended 18 NYCEE 369.1. As it is now written, a social service worker may not discontinue ADC (aid to dependent children) benefits to a mother or her children because of her failure to co-operate in locating the missing father.[1]
*18 Plaintiff contends that (1) the regulation is a violation of the existing New York Social Services Law in that it conflicts with other statutory responsibilities imposed upon the Commissioner and local agencies, and (2) its effect is to illegally inhibit the proper performance of the plaintiff’s legal duties and responsibilities. The defendant argues that the amendment was required in order to properly comply with subdivision (a) of section 602 of title 42 of the United States Code (Public Health and Welfare) and because State regulations that condition the eligibility of an entire family for benefits under ADC (aid to dependent children) on the mother’s assistance in locating an absent father, impose an additional requirement that is not authorized.
Generally, the administrative body which derives its authority from a statute is deemed the best qualified to construe its intent. If its resulting regulations are lawful, they will be sustained by the courts.
“It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v. Wyman, 28 N Y 2d 434, 438, Fuld, Ch. J.)
Continuing in Matter of Howard, the court said (p. 438): ‘ ‘ ‘ The administrative determination is to be accepted by the courts “ if it has ‘ warrant in the record ’ and a reasonable basis in law ” [Board v. Hearst Publications, 322 U. S. 111]. “ The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body” (Rochester Tel. Corp. v. U. S., 307 U. S. 125, 146).’”
The question before the court is unique in that it involves a change in an existing regulation which previously purported to express the intent of the statutes (Social Services Law of the State of New York and the appropriate Federal statutes) without any concurrent statutory revisions.
Defendant’s action purports to reflect the legal effect of certain recent court decisions. These decisions have held that the authorization of aid to dependent children should be conditioned upon a determination of need only. (Doe v. Shapiro, 302 F. Supp. 761 [D. Conn., 1969], app. dsmd. 396 U. S. 488; Doe v. Harder, 310 F. Supp. 302 [D. Conn., 1970]; Woods v. Miller, *19 318 F. Supp. 510 [W. D. Penn., 1970]; Cooper v. Laupheimer, 316 F. Supp. 264 [E. D. Penn., 1970]; of. King v. Smith, 392 U. S. 309 [1968].) Apparently to conform with these decisions, the Commissioner amended section 369.1 as indicated.
In Doe v. Shapiro (supra), the court held that welfare assistance could not he withheld from an illegitimate child because of the failure of the mother to name the father. It recognized the obligation that provisions be made for establishing paternity. (U. S. Code, tit. 42, § 602, subd. [a], par. [17], subpar. [A], cl. [i].) However, it argued that the “ one thing the state may not do in the case of the non-cooperating mother is terminate AFDC assistance to her concededly eligible child.” (p. 765). Doe v. Harder (supra) also struck down an attempt to deny support to the mother for the same reasons.
In Cooper v. Laupheimer (supra) it was held that ADC (aid to dependent children) payments could not be reduced by the amount of duplicate payments received. The court reasoned that an otherwise eligible child would not be deprived of aid to dependent children funds because of the misconduct of the parent. In Woods v. Miller {supra) an attempt to terminate welfare payments because of .the failure of the recipient to initiate a court action for collection against a relative was rejected.[2]
In considering the problem of collection from abandoning parents, it was the clear intention of Congress to give the States “ additional tools and to impose further obligations upon them to assure the determination of legal responsibility for support and to make efforts to make these collections. The committee believes it is essential to make certain that all legally responsible parents of sufficient means make their appropriate contribution to the support of their children.” (S. Report No. 744, 90 Cong. 1st Ses.s. [1967], reprinted in U. S. Code Cong. & Admin. News 1st Sess. [1967], pp. 2834, 2997). The report further authorized the rare use of the master file list of taxpayers maintained by the Internal Revenue Service as well as Social Security Administration assistance, to locate deserting parents for collection purposes. This does not indicate a policy of slackening efforts *20 in this regard. The Department of Health, Education and Welfare did not believe .this new attitude imposed any additional eligibility requirement. (HEW Handbook of Public Assistance Administration, Part IV, § 8120; Code of Fed. Reg., tit. 45, § 220.48.) However, New York already had a requirement for disclosure which had been approved by HEW, which the Commissioner now seeks to eliminate. There is no indication of a change in the attitude of Congress or HEW which could serve as a basis for 'his conclusion.
In Wyman v. James (400 U. S. 309) the United States Supreme Court considered the validity of a New York statute requiring home visitation and the Commissioner’s regulations applying it to the ADC program. (Social Services Law, § 134; 18 NYCRR 351.10 and 351.21.) In that case, the mother refused to permit a social worker to make a routine visit to her home. As a result, assistance to her and her children was terminated in conformity with the regulation. The Supreme Court upheld this action as not being inconsistent with the program (U. S. Code, tit. 42, § 601 et seq.) and not violative of any constitutional right. It reasoned that “ the agency * * * is fulfilling a public trust * * * in seeing and assuring that the intended and proper objects of that tax-produced assistance are the ones who benefit from the aid it dispenses.” (Wyman v. James, pp. 318-319). The court observed that the home visit was not required by the Federal statutes, but there was no conflict because the State added such a condition. It concluded that “ it serves a valid and proper administrative purpose for the dispensastion of the AFDC program” (p. 326). The court held that the Commissioner could require home visits and in the event of the failure of the mother to co-operate, cut off assistance to her and her children. This holding is completely contrary to the arguments in Doe v. Shapiro (302 F. Supp. 761, 765, app. dsmd. 396 U. S. 488 [under rule 13]); Doe v. Harder (310 F. Supp. 302) and Cooper v. Laupheimer (316 F. Supp. 264) allegedly relied upon by the Commissioner.
That argument having been rejected by the Supreme Court undermines the Commissioner’s reasons for changing the existing regulation to conform to the case law. Therefore, coupled with the enactments of Congress and the regulations of the Department of Health, Education and Welfare, there is no justification for the Commissioner’s new interpretations of the Federal law.
However, the next question to he answered is whether or not his action was lawful or reasonable under any interpretation, of *21 the Social Services Law of the State of New York. (Matter of Howard v. Wyman, 28 N Y 2d 434, supra, and cases cited.) The Legislature has established and had approved a welfare plan. It imposes certain responsibilities upon the State and local officials. Section 101 of the Social Services Law contains a statement which reflects the policy of the New York Legislature: “ The spouse or parent of a recipient of public assistance * * * shall, if of sufficient ability, be responsible for the support of such person ”. There is a similar section in the Family Court Act (§ 415). It is also provided in the Domestic Relations Law (§32) that a parent shall be liable for the support of his dependent children and is subject to punishment if he does not (§ 37).
Before public assistance is permitted, the need must be determined within the terms of the Social Services Law. Section 132 of the Social Services Law requires an investigation into the background of the applicant and specifically refers to the gathering of information regarding the ‘[1] ability to work of all members of the family, the cause of the person’s condition, the ability and willingness of family, relatives, friends and church to assist, and such other facts as may be useful in determining the treatment which will be helpful to such person ’ ’. Furthermore, under section 134-a, ‘‘ the appropriate public welfare official may deny, suspend or discontinue public assistance ’ ’ if the applicant does not give him specific information with reference to his eligibility. A determination of eligibility and need is contingent upon information which will enable the appropriate official to conclude that there is no financially responsible parent or guardian.
Elsewhere, paragraph 2 of subdivision B of section 349 of the Social Services Law provides ‘‘ no allowance shall be granted, when, in the judgment of the administrative agency, a parent has absented himself or herself from the home for the purpose of obtaining an allowance for his or her family.” Again, information regarding the whereabouts of the father is essential to comply with this section. Since the mother is generally the applicant and the person most likely to possess this information, her co-operation is crucial.
District Judge Claris in his dissent in Doe v. Shapiro acknowledged the realities of the problem when he said in part (302 F. Supp. at pp. 768-769): “ The mother’s disclosure * * * is an essential element in correctly evaluating [her] support capabilities * * *. It is through her, that the family unit is sought to be preserved * * *. Unless the principle of personal parental responsibility is to be abandoned * * * a full *22 disclosure is a necessary and implied governmental prerogative * * *. Absent this personal responsibility * * .* the effectiveness of the program would be seriously challenged because she is the sole source of this information
As a last resort in the event that she tries to co-operate but cannot furnish information, then the agency may attempt to use other means. (U. S. Code, tit. 42, § 601 et seq.) Meanwhile, she will be eligible for public assistance. Requiring her co-operation is not the establishment of a “ double standard ” as implied in a dissenting opinion in Wyman v. James (400 U. S. 309, 326, Douglas, J.). There would indeed be a “ double standard ’ ’ if the mother acting under the terms of the Domestic Relations Law was required to make full disclosure in order to get the assistance of the law, while the applicant for public assistance was required to give no information to help locate the father, and would still get the full benefit of the law.
Public assistance is based upon the economic fact that all citizens need spending power and some may be cut off from acquiring it because of the exigencies of life. However, there is no need to create a special class of people with special rules. This is not only unfair to the society, it is also unfair to the recipient. He should accept responsibilities which are common to every other citizen in daily life. Requiring an applicant to answer pertinent questions to establish his need is no different than a questionnaire furnished to applicants for employment or other services.
Speaking for the majority, Justice Blaokmuu argued (p. 325) that ‘ ‘ the only consequence of her refusal is that payment of benefits ceases. Important and serious as this is, the situation is no different than if she had exercised a similar negative choice initially and refrained from applying for AFDC benefits. ’ ’
The spirit of the law implies the co-operation of the applicant in furnishing appropriate information regarding the necessity of public assistance. The action of the Commissioner is an unlawful restriction upon the required administration of the Social Services Law.
Therefore, in view of the foregoing opinion, the new interpretation of the Social Services Law as indicated in 18 NYCRR 369.1 has no “ warrant on the record ” and no basis in law. - (Board v. Hearst Pub., 322 U. S. 111.) Therefore, the motion for a judgment declaring 18 NYCRR 369.1 null and void is granted.

. The disputed portion now reads as follows: “ (b) When a parent or other relative applies for an ADC grant for a child who has been deserted or abandoned, he shall be informed at intake that a report to the law enforcement official will be sent within 30 days after the first grant is made and that such parent or other relative is expected to co-operate in furnishing information which will help in the location and prosecution of the deserting or abandoning parent. However, ADC shall not be discontinued or denied any children, and their mother as caretaker of the children, because the mother refuses to furnish the necessary information or otherwise fails to cooperate with the social services official in the location and prosecution of the deserting or abandoning parent. Such failure to cooperate shall, in appropriate cases, be brought to the attention of the family court for whatever action which the court may wish to take under such circumstances.” Previously, this section had read as follows: “(b) WTien a parent or other relative applies for an ADC grant for a child who has been deserted or abandoned, he shall be informed at intake that a report to the law enforcement official will be sent within 30 days after the first grant is made and *18 that such parent or other relative is expected to co-operate in furnishing information which will help in the location and prosecution of the deserting or abandoning parent, (c) If the applicant refuses to give the necessary information, ADC shall he denied. Such refusal also makes such person ineligible for HR.”

. 18 NYCRR 351.2 prohibits the denial of aid to dependent children when the mother refuses to start or co-operate in a paternity action against the father of the dependent child. Whether or not a mother should be compelled to start a lawsuit in order to co-operate seems extreme. However, requiring her co-operation in proving the ease might not he inconsistent. Since this matter is not before the court at this time, no determination is made as to its legality except as may appear in the opinion.