**Marie BRADFORD et al., Plaintiffs,**

v.

**Andrew JURAS, individually and as Administrator of the Public Welfare Division, and the Public Welfare Division of the State of Oregon, Defendants.**

**Civ. No. 70–621.**

United States District Court,
D. Oregon.

July 12, 1971.

Charles J. Merten, H. Jay Folberg, Bonnie Broeder, Robert J. Altman, Legal Aid Service, Portland, Or., for plaintiffs.

Lee Johnson, Atty. Gen., James W. Durham, Jr., Kathryn Kelty, Asst. Attys. Gen., Salem, Or., for defendants.

## OPINION

Before KILKENNY, Circuit Judge, and BELLONI and GOODWIN, District Judges.

ALFRED T. GOODWIN, District Judge:

This class action by welfare recipients challenges regulations under which the Oregon Public Welfare Division recoups public-assistance overpayments from current welfare grants.

Plaintiffs assert that the regulations are unconstitutional and inconsistent with the Social Security Act. They demand injunctive and declaratory relief. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284.

This court has jurisdiction of the subject matter under 28 U.S.C. §§ 1343(3) and (4); 42 U.S.C. § 1983. Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The court must consider both the constitutional questions and the pendent statutory claim. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Rosado v. Wyman, *supra*.

Each plaintiff has received a lump-sum income tax refund and has failed to report the receipt of the money to the state welfare agency. The agency has learned of the unreported receipts and has reduced each welfare grant by ten per cent in order to recover, in installments, funds which the state claims are

overpayments. (One plaintiff whose reduced grant was subsequently restored has been stricken from the plaintiff class as his claim is moot.)

With one exception, none of the remaining plaintiffs had assets other than the welfare grant from which repayment could have been made. The one exception is plaintiff Bradford, who earns and retains income pursuant to welfare incentive regulations.

Plaintiffs Bradford and Moore were afforded notice and a hearing before their grants were reduced. Plaintiff Kyle received no hearing prior to reduction of the grant.

■ During pretrial proceedings before a single judge, the issues were narrowed by a ruling that defendant could not reduce a grant without a hearing.

The central remaining question is whether the State of Oregon has a lawful right to recover client-caused overpayments, after hearing, by reducing current assistance grants.

Pursuant to the authority conferred by Congress to administer Aid to Families with Dependent Children, the Department of Health, Education and Welfare has promulgated the following regulation:

"[C]urrent payments of assistance will not be reduced because of prior overpayments unless the recipient has income or resources currently available in the amount by which the agency proposes to reduce payment; except that where there is evidence which clearly establishes that a recipient willfully withheld information about his income or resources, such income or resources may be considered in the determination of need to reduce the amount of the assistance payment in current or future periods * * *." 45 C.F.R. § 233.20(a) (3) (ii) (d).

In December 1970, defendant promulgated Executive Task Force Bulletin 25–E. It defines overpayment as any payment in excess of the amount to which a recipient is entitled. A client-caused overpayment is one which results from the failure of the recipient to report information affecting need or eligibility.

Bulletin No. 25–E specifies four sources of recovery for client-caused overpayments:

(a) Cash balances available from receipt of income or resources not properly taken into account in grant computation.

(b) Cash reserves including cash on hand; bank accounts; building and loan accounts or shares; stocks and bonds; cash value of insurance; market value of a second automobile.

(c) The assistance payment.

(d) For employed persons, the "earnings disregard."

Plaintiffs claim that recovery from the following sources is improper and illegal: (1) cash reserves held pursuant to state welfare regulations; (2) income earned by the recipient and disregarded in computing need for welfare purposes (i. e., the "earnings disregard"); and (3) the assistance payment.

■ We hold that the state can recover client-caused overpayments from both cash reserves and income earned and disregarded pursuant to state regulations.

The states are not required to allow cash reserves or work-incentive income in addition to AFDC grants. 45 C.F.R. 233.20(a) (3) (i) and (a) (11). The states are merely permitted to do so as a matter of discretionary local policy. The federal regulations treat cash reserves and income disregards as separate and distinct from the welfare grant. We see no reason why the state may not do likewise.

Since a state may, in the exercise of its discretion, eliminate both the cash reserve and the income disregard, it may, as a temporary expedient, look to these assets in recovering client-caused overpayments. Neither the federal statute nor the United States Constitution is offended by such an action. *Cf.*, Dan-

dridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970).

█ The next question is whether the state may also reduce current assistance grants when the overpaid recipient willfully withholds information but has no resources apart from the current assistance grant.

The state may not reduce current grants when a recipient nonwillfully withholds relevant information. 45 C. F.R. § 233.20(a) (3) (ii) (d). A recipient's mistaken belief that she has no duty to report the extra income precludes reduction of the grant to recover the overpayment once the money has been spent. However, when the recipient knows of her duty to report income and willfully fails to do so, current regulations appear to permit the state to reduce grants until the overpayment has been recouped. 45 C.F.R. § 233.20(a) (3) (ii) (d).

We hold, however, that recoupment from current assistance grants violates the spirit and the intent of the statute establishing Aid to Families with Dependent Children.

The primary concern of Congress in establishing the AFDC program was the welfare and protection of the needy dependent child. 42 U.S.C. § 601; King v. Smith, 392 U.S. 309, 313, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). This concern is thwarted when recoupment from current grants takes money from the child to penalize the misconduct of its parent.

Our focusing on the welfare of the child in interpreting the will of Congress with respect to recovery of overpayments does no violence to the teachings of the recent Supreme Court case of Wyman v. James, 400 U.S. 309, 91 S. Ct. 381, 27 L.Ed.2d 408 (1971). In that case, the federal statute implicitly authorized home visits by welfare workers. The only question before the Court was whether the state violated a recipient's Fourth Amendment rights by making a home visit a condition of eligibility. The Court held the statutory requirement constitutional. It then went on to

say that the termination of welfare benefits for failure to permit the home visit harmed the child no more than many other decisions the mother might make, including a decision not to apply for welfare at all.

Bradford's case is entirely different from that of *James*. Congress has not authorized reduction of welfare grants to recover past overpayments. Indeed, it has implicitly declined to authorize them, since it included an explicit provision for recovery of overpayments by grant reduction in another welfare program, the Federal Old Age, Survivors, and Disability Insurance program, 42 U.S.C. § 404(a). Further, the *James* case turned on a constitutional question, and did not deal with the threshold question of legislative authorization.

We believe that if Congress had intended past overpayments to be recovered from current grants, it would have so stated, as it did in the OASDI program. The child-oriented policy of the AFDC program requires that children with equal needs be treated equally. The fact that a parent-recipient has acted wrongfully in the past by withholding information does not justify reducing the subsistence level of her children below that of other needy children.

Oregon has at its disposal a variety of methods other than grant reduction for recovering excess payments. None contravenes the intent of the Social Security Act to provide for needy, dependent children. The state may seize any cash balances on hand; it may revoke the privilege of maintaining cash reserves or of earning extra income; it may obtain a civil judgment and seek to satisfy the judgment when the recipient is able to pay; and it may bring a criminal prosecution for fraud. Any or all of these methods will recover available money rightfully due the state without violating the federal policy in favor of providing support for those who cannot support themselves. Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa.1970).

In the *Cooper* case, a group of welfare mothers brought a class action challeng-

ing the validity of Pennsylvania regulations which compelled the reduction of assistance grants for up to two months whenever a duplicate welfare check was wrongfully (or innocently) received and cashed by the recipient. A three-judge court held that this method of exacting restitution for overpayments was contrary to the Social Security Act, and enjoined the practice. The court held:

"The Pennsylvania regulation is inconsistent with the Social Security Act * * * [in that] it punishes the child by depriving him of a substantial portion of AFDC assistance which he is eligible to receive because his mother mistakenly or fraudulently obtained an extra payment months ago * * *." 316 F.Supp. at 269.

Our present ruling obviates the necessity of deciding the constitutional issues raised by the plaintiffs in connection with grant reductions.

■ Since the State of Oregon has acted in good faith and in reliance upon regulations of the Department of Health, Education and Welfare in reducing current grants to recover past overpayments, plaintiffs' claim for retroactive lump-sum adjustment to restore all sums withheld is denied. The plaintiffs were, in fact, overpaid. The rights of the parties in this case are declared as of the day of the judgment.

The State of Oregon is permanently enjoined from attempting in the future to recoup overpayment of welfare funds by reducing current AFDC payments. The orders of the single judge of this court issued April 2, 1971, are dissolved. Counsel for the plaintiff will present an appropriate judgment and order.

KILKENNY, Circuit Judge (concurring and dissenting):

I concur in the majority opinion, with the exception of the holding that recoupment from current assistance grants violates the spirit and intent of the statute establishing Aid to Families with Dependent Children and consequently, I would not permanently, or otherwise,

enjoin the state of Oregon from attempting in the future to recoup overpayment of welfare funds by reducing current AFDC payments.

It is my view that recoupment from current assistance grants is entirely consistent with, and conforms to, the letter and intent of relevant federal legislation and is constitutional under the teachings of Wyman v. James, 400 U.S. 309, 91 S. Ct. 381, 27 L.Ed.2d 408 (1971). See also Saiz v. Goodwin, 325 F.Supp. 23 (D.N.M.1971).