■ GERMAINE GRIFFITH, Petitioner, v. GEORGE K. WYMAN, as Commissioner of the New York State Department of Social Services, et al., Respondents. DOROTHY BOYD, Petitioner, v. GEORGE K. WYMAN, as Commissioner of the New York State Department of Social Services, et al., Respondents.— Determinations of State Commissioner of Social Services, rendered after a hearing, affirming determinations of New York City Department of Social Services, which reduced certain installment payments of the respective petitioners' current public assistance grants, annulled, on the law, without costs or disbursements, and the respective matters remitted to the State Commissioner for rehearing. The reductions in these cases were directed by the said New York City Department for the purpose of recovering the amounts of public assistance checks which the respective petitioners had allegedly received, indorsed and cashed after having given allegedly false statements that the checks were either stolen, lost or undelivered. The petitioners in each case, pursuant to law, had requested a "fair hearing". (See Social Welfare Law, §§ 139-a, 213, 353.) The Attorney-General in his brief in the *Griffith* case concedes that: "The purpose of the state fair hearing is to provide a de novo review of the facts of the controversy and the fair hearing procedure and determinations must accord with due process requirements and be based on substantial evidence." But the hearings in these cases did not meet the requirements of a "fair hearing"; they did not comply with minimal due process requirements; nor were the respective determinations of the State Commissioner supported by substantial evidence. In the *Griffith* case, the hearing was called and proceeded in the absence of recipient's counsel although the hearing officer knew or, from the record, should have known that she was represented by counsel. In the absence of counsel, the hearing officer questioned the recipient and obtained an admission that she had in fact indorsed the particular check but she stated that it had been stolen or lost thereafter. Then, when counsel later appeared during the progress of the hearing, counsel was placed in an obviously unfair position in an effort to "impeach" or explain the admissions of her client. In any event, the testimony of the recipient, considered as a whole, is confusing and it does

not satisfactorily appear that she had cashed the check and received the proceeds. On the record, we conclude that the recipient did not receive a "fair hearing" and that there is lacking substantial evidence to support the Commissioner's determination. In the *Boyd* case, the determination rests principally on hearsay evidence that the signatures on the allegedly lost checks had been compared and determined to be those of the recipient. The city department's representative merely testified that its handwriting expert, who had been reviewing signatures of years, had determined that the indorsements of the recipent's name on the allegedly lost checks were the signatures of the recipient. The handwriting expert, however, was not called as a witness or presented for cross-examination. Here, the hearsay evidence had such a harmful and unfair effect as to vitiate the fairness of the hearing. (See *Matter of Erdman* v. *Ingraham*, 28 A D 2d 5, 9.) Furthermore, the determination resting principally on this particular testimony of the city department representative, without the testimony of the handwriting expert, does not constitute substantial evidence supporting the determination of the Commissioner. (See *Matter of Collins* v. *Wyman*, 38 A D 2d 600.) Also, in this case, it should be noted that the public assistance paid to the recipient was primarily for the support of her five children. They may not be charged with the fraud or wrongdoing of this petitioner. This factor should be a matter for consideration by the State Commissioner on a rehearing. Finally, it should be noted that, certainly, on the determination that the allegedly lost checks had actually been received by the respective recipients and cashed, the city department was under the duty to and did proceed as authorized by law (18 NYCRR 352.7 [g] [1]) to recoup the amounts of the checks.[1] There is no general conflict between the State and Federal Regulations (tit. 45, part 233) preventing application of the State regulation for reduction of future grants to recipients of public assistance to cover the amounts of the allegedly lost or undelivered checks where the recipients file allegedly false loss statements. Actually, in these cases, we are constrained to annul the determinations of the State Commissioner solely because of the failure of compliance with proper fair hearing procedures. Concur— Markewich, J. P., Kupferman, Tilzer and Eager, JJ.; Steuer, J., dissents in the following memorandum: The two cases decided by the majority are not distinguishable in the view taken and hence are properly considered as one. However, in the view I take there is a vital distinction not only necessitating separate discussion but mandating different results. Both cases arise from challenges to the respondent's action in reducing welfare payments to

---

1. Title 18 of the New York Codes, Rules and Regulations provides:

"352.7 * * * (g) *Payment for services and supplies already received.* Assistance grants shall be made to meet only current needs. Under the following specified circumstances payment for services or supplies already received is deemed a current need:

(1) If a check for a grant is reported lost or stolen, an affidavit of loss shall be required of the recipient and payment of the check shall be stopped. Such check shall be replaced without delay and issuance of such replacement shall not be delayed pending further substantiation of client's affidavit. If payment cannot be stopped, the social services district shall claim State reimbursement on only one of the two checks. When it is established that a recipient endorsed and cashed an allegedly lost, stolen or undelivered check which has been replaced, subsequent grants shall be reduced over a period not in excess or six months, to provide for recoupment of such payment. Under such circumstances the allowance to meet the rent may be paid on a restricted basis during the period of recoupment."

recoup what is claimed to be duplicate payments. In the *Boyd* case the payment was pursuant to the Aid to Families of Dependent Children (AFDC) program; in the *Griffith* case payments were made pursuant to the Old Age Assistance (OAA) program. The Boyd Case — In this matter the majority has decided to annul the respondent's determination and to remand the matter to respondent for a further hearing on the ground that the petitioner did not obtain a fair hearing. I would annul the determination and grant the petition. The petition seeks restitution of the amounts deducted from petitioner's welfare grant. The amounts were deducted to recoup an overpayment resulting from the duplication of two checks in the total sum of $251. A "Notice of Intent to Reduce" was served on petitioner in regard to each of the checks some six months after the issuance of the respective duplicate check. The regulations of the Secretary of Health, Education and Welfare provide in regard to AFDC (45 CFR 233.20): " § 233.20 Need and amount of assistance. (a) Requirements for State Plans. A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below: * * * (3) Income and resources: OAA, AFDC, AB, APTD, AABD. * * * (ii) Provide that, in establishing financial eligibility and the amount of the assistance payment: * * * (d) Current payments of assistance will not be reduced because of prior overpayments unless the recipient has income or resources currently available in the amount by which the agency proposes to reduce payment; except that where there is evidence which clearly establishes that a recipient wilfully withheld information about his income or resources, such income or resources may be considered in the determintion of need to reduce the amount of the assistance payments in current or future payments." There is no dispute but that this regulation has the force of statute. As such it supersedes any State regulation to the contrary (*Cooper* v. *Laupheimer*, 316 F. Supp. 264). Respondents contend that any misrepresentation as to the receipt of the proceeds of the original check brings the case within the exception for willful withholding of information about income or resources. And also that to hold otherwise would encourage fraud. The argument overlooks the express purpose of the act. The beneficiaries of the act are children. The courts have recognized that their current needs are not lessened by an overpayment in the not too recent past. Nor are they to be penalized for their parent's action, illegal or even criminal. State regulations are statute to the contrary are no bar (*Bradford* v. *Juras*, 331 F. Supp. 167, *Cooper* v. *Laupheimer*, *supra*). The mere fact that recovery of the excess payment by suit would seldom prove productive and criminal proceedings are likely to be illusive makes no difference. As the question to be litigated at the hearing, whether or not there were duplicate prior payments, does not affect the right to the continued payments without deduction, a further hearing is futile. The Griffith Case — This petitioner was the recipient of welfare payments under the Old Age Assistance program. It is urged on her behalf that the same regulation should apply despite the fact that concededly there is no similar regulation under this Act. The argument is that the same considerations affect the plight of the aged that are present in the needs of children. The answer is that some of the same considerations apply. There is lacking the factor of absence of personal fault which is stressed in the cited decisions. There being no statutory bar to enforcing recoupment, it is allowable. There remains the question of whether petitioner received a fair hearing. Without recapitulating the entire proceeding before the hearing officer, it appears that the essentials of a fair hearing were present. There was substantial evidence of the double payment and the proceedings were conducted without any infringement of a substantial right. A degree of informality is inherent in administrative hearings and what was shown to transpire here did not go beyond what was permissible. I do not

believe on this record that any real doubt as to the correctness of the finding could be entertained. I would confirm respondent's determination.

