OPINION OF THE COURT
David B. Saxe, J.
Deon Williams, the petitioner, is a two-year-old boy who, since birth, has suffered from sickle-cell anemia. This disease has impeded his physical development which is evidenced by inadequate bone formation, slowly developed speech abilities, and general sluggishness.
His family, which consists of his mother and a 13-year-old brother, has, as its sole source of income, a public assistance grant of $213 semimonthly and food stamps of $130 monthly.
The infant’s poor medical condition and his family’s poverty have entitled him to participate in the special Supplement Food Program for Women, Infants, and Children (WIC).[1] Deon had received these benefits since his birth in 1983 and up until August 19, 1985.
On August 19, 1985, petitioner’s mother, Doris Williams, went to the Bronx-Lebanon Hospital where the WIC benefits were administered and special supplement food checks were distributed to participants in the program. Ms. Williams was at the hospital that day for two reasons: first, to recertify her son Deon as a participant in the program[2] and secondly, to pick up her son’s benefit checks.
There is a dispute as to what happened while Ms. Williams waited in the line, but an argument erupted between Ms. Williams and her assigned caseworker, Mrs. Bernardo,[3] and Ms. Williams struck Mrs. Bernardo.
The result of this incident was that Deon Williams did not get his benefit checks, nor was he recertified in the WIC program.
*819 Ms. Williams was notified that her son was terminated from the program during a meeting with the director of the hospital’s WIC program, Dosoon G. Min, after the incident, and by written notice sent to her dated August 20, 1985.
Ms. Williams contested the termination by requesting a fair hearing on the matter as allowed by 7 CFR 246.9. A hearing was held before Administrative Law Judge (ALJ) Harry Schechtman on October 9, 1985. The ALJ’s decision held that the termination of Deon Williams’ benefits was proper and that his recertification in the program should continue to be denied because of his mother’s physical abuse of the caseworker.
Deon Williams has moved pursuant to CPLR article 78 against David Axelrod as Commissioner of the New York State Department of Health (respondent) and Dosoon Min[4] and has requested that the hearing decision be annulled, that he be certified as a participant in the Bronx-Lebanon Hospital WIC program with all withheld WIC benefits restored.[5]
Under CPLR 7803 (3), the only questions that may be raised in this review are: "[wjhether a determination was * * * affected by an error of law or was arbitrary and capricious or an abuse of discretion * * * as to the measure or mode of penalty or discipline imposed”.
Congress established the WIC program in 1972 (42 USC § 1786) as an amendment to section 17 of the Child Nutrition Act of 1966 recognizing that "substantial numbers of pregnant, postpartum and breastfeeding women, infants and young children from families with inadequate income are at special risk with respect to their physical and mental health by reason of inadequate nutrition or health care, or both.” (7 CFR, ch II, part 246, subpart A, 246.1.) Congress intended the program to "serve as an adjunct to good health care during critical times of growth and development, in order to prevent the occurrence of health problems and to improve the health status of these persons.” (7 CFR 246.1.) The program supplies supplemental foods and nutrition education through payments of cash grants to State agencies which elect to participate in *820 the program. These State agencies administer the program through local agencies at no cost to those persons eligible for the program.
Participant eligibility in the WIG program is governed by 7 CFR 246.7. Program eligibility is limited to breastfeeding women,[6] postpartum women,[7] pregnant women,[8] infants,[9] and children,[10] at nutritional risk. "Nutritional risk” is defined as those who differ from "(a) detrimental or abnormal nutritional conditions detectable by biochemical or anthropometric measurements; (b) other documented nutritionally related medical conditions; (c) dietary deficiencies that impair or endanger health; or (d) conditions that predispose persons to inadequate nutritional patterns or nutritionally related medical conditions.” (7 CFR 246.2.)
Income requirements for participants are left to the State to determine within certain guidelines as controlled by 7 CFR part 246. "The State agency shall establish, and provide local agencies with, income guidelines, definitions, and procedures to be used in determining an applicant’s income eligibility for the Program.” (7 CFR 246:7 [c].)
Petitioner contends, without disagreement by respondent, that he fulfills all of the income and health requirements of Federal, State, and local agencies, and that the sole reason for his termination from the program for which he is eligible is his mother’s actions. Respondent states that such termination was legitimate and relies upon 7 CFR 246.12 (k) (2), which deals with participant sanctions to substantiate this claim.
Section 246.12 (k) (2) states, in pertinent part, that "[T]he State agency shall establish procedures designed to control participant abuse of the Program. Participant abuse includes * * * physical abuse, or threat of physical abuse, of clinic * * * staff.” Respondent claims that Ms. Williams’ actions fell within the purview of this section because she, as well as her son Deon, should be considered participants. This is not so. Ms. Williams is not a participant in the program. Congress *821 defined “participants” to mean “pregnant women, breastfeeding women, postpartum women, infants, and children who are receiving supplemental foods or food instruments under the Program.” (7 CFR 246.2.) While Deon Williams obviously does fit within the definition of “Participant”, Ms. Williams’ inclusion in the statute cannot be “logically extended” as respondent maintains. If Congress had wished to include infant’s and children’s parents or guardians within the meaning of the statute, it would have plainly stated so. The central purpose of the program is the welfare of the child. Any such other construction of the term "Participant” would leave the child’s welfare at the mercy of his parent or guardian’s actions.
It has been held that needy children may not be penalized by the loss of public assistance on the basis of their parent’s conduct. (See, e.g., King v Smith, 392 US 309 [1968]; Rush v Smith, 573 F2d 110 [1978]; Bradford v Juras, 331 F Supp 167 [1971]; Cooper v Laupheimer, 316 F Supp 264 [1970].) In King v Smith (supra) the State of Alabama was participating in a Federal Government program to aid single-parent families with dependent children (AFDC). The State agency issued a regulation which denied AFDC payments to otherwise eligible children of mothers who “cohabited” with any single or married man. This "substitute father” regulation was enacted ostensibly to prevent the payment of State funds to those " 'families who because of their living arrangements would be in the same situation as if the parents were married’ ” (392 US, at p 327). In invalidating the regulation, the court strictly construed the term "parent” to mean "an individual who owed to the child a state-imposed legal duty of support” and that this regulation did not include individuals with whom the parent merely cohabited. (Supra, p 329.) The court stated that "Congress must have intended that the children in such a situation remain eligible for AFDC assistance notwithstanding their mother’s impropriety.” (Supra, p 329.)
In Rush v Smith (573 F2d 110 [1978], supra), a child recipient of benefits under a New York AFDC program brought a class action suit challenging the New York City program’s income maintenance procedures which authorized the termination of benefits to recipients who failed to report for scheduled interviews to investigate the fraudulent cashing of duplicate checks. In holding that such a regulation was invalid and that the child should continue to get payments, the court *822 stated that "the sin of the mother, even such an egregious one as refusing the very modest cooperation New York City has required with regard to her own fraud, shall not be visited upon the children.” (573 F2d, at p 118.)
In Matter of Gunn v Blum (48 NY2d 58 [1979]), a family’s AFDC benefits were discontinued because the New York agency had determined that the husband owned an automobile which, not being essential to the family’s needs, should have been sold in order to reduce or eliminate the family’s need for public assistance. In reversing the hearing decision to terminate the family’s benefits, and in reinstating the children’s benefits, the court determined that the dependent child’s needs are paramount and must be protected. (Supra, p 63.) The court stated that "any reduction in assistance directed to a dependent child without a corresponding decrease in that child’s need, plainly thwarts the purpose of the program.” (Supra, p 64.) The court continued: "[W]hile we recognize the department’s obligation to preserve the public fisc * * * we are persuaded that there are alternative means available to accomplish that objective without resorting to terminating aid to needy children.” (Supra, p 65.)
In this case, the son is being punished for his mother’s actions. Deon Williams is entitled to receive the benefits under the WIC program. He fulfills all of the requirements of Federal, State and municipal agencies. Hite mother’s actions as a nonparticipant cannot affect his eligibility to receive benefits under the WIC program.[11]
I am not condoning Ms. Williams’ actions, but while I recognize that an agency must protect its employees or volunteer workers from harm, there are alternative means to achieve this goal without terminating the benefits of eligible and needy child recipients under the program. In fact, the agency did avail itself of an alternative to protect its staff from further abuse by Ms. Williams by bringing criminal charges against her. A court order now prevents Ms. Williams from returning to the Bronx-Lebanon Hospital.
I hold that the ALJ’s determination was arbitrary, capricious, and contrary to law and, therefore, the certification of *823 Deon Williams at the Bronx-Lebanon Hospital’s WIC program should be reinstated and that the benefits that Deon Williams did not receive due to his termination from the hospital’s program on August 19, 1985 up until his certification in another hospital’s WIC program on December 24, 1985, be restored to him.

. A program sponsored and regulated by the Federal Government and entered into by voluntary agreement by New York State.

. Recertification is required under the Federal rules of the program (7 CFR 246.7 [f] [2] [v]) in order to determine whether the participant continues to meet eligibility requirements under 7 CFR 246.7, subpart C.

. Ms. Williams and Mrs. Bernardo had not been getting along for some time by this point in their relationship. In fact, Ms. Williams had complained prior to this incident to Dosoon G. Min, the director of the Bronx-Lebanon Hospital’s WIC program, but nothing was done to ameliorate the situation.

. This proceeding is now only brought against respondent Axelrod because Dosoon G. Min and petitioner have managed to settle out of court.

. The petitioner has requested this court to require the respondent to promulgate written rules and regulations concerning present procedures in the State agency, however, this issue is not dispositive to the facts of this action and, therefore, will not be decided upon in the case at hand.

. "[W]omen up to one year postpartum who are breastfeeding their infants.” (7 CFR 246.2.)

. "[W]omen up to six months after termination of pregnancy.” (7 CFR 246.2.)

. "[W]°men determined to have one or more embryos or fetuses in útero.” (7 CFR 246.2.)

. "[P]ersons under one year of age.” (7 CFR 246.2.)

. Persons between one year and five years of age. (7 CFR 246.2.)

. Though the court does not decide on the issue of "participant abuse”, it would appear that a participating mother’s improper actions cannot affect the eligibility of her participating son to receive benefits in a WIC program.