In the Matter of JEAN CHAMPION, Petitioner, v ABE LAVINE, Individually and as Commissioner of the New York State Department of Social Services, and ANTOINETTE HYER, Individually and as Commissioner of the Oneida County Department of Social Services, Respondents.

Fourth Department, December 12, 1975

*Norman G. Rosen (Marc Jones* of counsel) for petitioner.

*Louis J. Lefkowitz, Attorney-General (Eileen Sullivan* and *Jean M. Coon* of counsel), for Abe Lavine, respondent.

*Richard A. Koehler* for Antoinette Hyer, respondent.

WITMER, J. The basic question presented on this appeal is whether petitioner, a recipient of public assistance who cashed the check which she received for her February, 1975 grant and then lost most of the proceeds thereof, is entitled to have respondent commissioner make up the loss, or any part thereof, by an emergency grant. We answer in the affirmative.

On Saturday, February 1, 1975 petitioner received from respondent Commissioner of Oneida County Department of Social Services her monthly assistance check in the sum of $195.15 for herself and her two children. She cashed it and

used over $14 of the proceeds to buy groceries, kept out $10 or $11 to buy drug store items and placed the remaining $170 in her wallet for later use to pay rent and buy food stamps. On that same day she lost the $170, and notified the police thereof. It was not recovered, and on Monday, February 3 she notified respondent of the loss and asked for emergency replacement of it. Respondent refused the request upon the grounds that the county would not replace lost assistance money because the State would not reimburse the county therefor and, anyway, petitioner had not established that she was destitute and thus entitled to emergency aid.

Petitioner then asked for a "fair hearing", and one was held by respondent Lavine, Commissioner of New York State Department of Social Services, on February 15, 1975. Upon the hearing it was developed that petitioner and her children had been found by respondent county commissioner to need $300 per month and that she was entitled to public assistance in such amount less other resources, to wit, she was receiving $17 per week, amounting to $73.65 per month, support from another source, reducing her monthly assistance allotment to the sum of $226.35; and it was also noted that in 1974 she had earned $93.61 and that, although she was no longer employed, respondent Department of Social Services of Oneida County was recouping that amount by reducing her net monthly assistance check of $226.35 by the sum of $31.20 for the months of December, 1974 and January and February, 1975. Hence her check in February, 1975 was in the amount of $195.15.

Upon the hearing it was also brought out that because of the loss of the money, petitioner had not paid her February rent in the sum of $100 nor had she paid her utility bills, but no notice to evict her had been served and her utilities had not been cut off. Petitioner had been living in February on the extra support money of $17 per week plus help which she received from her mother.

Commissioner Lavine affirmed the county commissioner's determination, ruling that subdivision (d) of section 352.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR 352.2 [d]) is discretionary in nature and that the county is not obligated to replace a lost cash grant; that by express provision of regulation 18 NYCRR 372.2 (c) petitioner was not entitled to replacement of a grant which was lost; and that petitioner had not

shown that she was destitute and thus in need of emergency assistance.

Preliminarily we shall dispose of petitioner's contention that Commissioner Lavine's findings of fact are not supported by substantial evidence. Petitioner challenges the findings: (1) that her mother provided financial assistance to relieve petitioner's hardship; and (2) that petitioner had available income of $93 monthly in excess of the assistance grant. As to (1), petitioner testified that her mother gave her financial help and so this finding by the commissioner is supported by substantial evidence, although the amount of such assistance was not shown. As to (2), there is no support in the record for such finding, and in their brief on this appeal respondents so state. Apparently the commissioner was confusing the item of $93.61 earned by petitioner in 1974 which was recouped by the county in three monthly installments ending in February, 1975. Such finding should, therefore be deleted from the commissioner's decision.

Section 350-j of the Social Services Law provides that persons eligible to receive aid for dependent children, as is petitioner, are entitled to receive emergency assistance for a period not in excess of 30 days to avoid destitution. In existence at the time of petitioner's above application was regulation 18 NYCRR 372.2 (c), thereafter deleted on July 3, 1975, which provided that "Emergency assistance shall not be provided when destitution is due to loss, theft, or diversion of a grant already made". In *Matter of Jones v Berman* (37 NY2d 42, 52–53) the Court of Appeals held that this subdivision (c) was invalid on the ground that "the summary denial of assistance without regard to the honesty of the loss or the actual destitute circumstances of the people intended to be protected by the act, was both arbitrary and capricious". The commissioner's reliance upon subdivision (c) of section 372.2 in denying petitioner's request for emergency assistance was, therefore, erroneous.

Regulation 18 NYCRR 352.2 (d) provides that, "Supplemental allowances and grants may not be made other than as authorized under the regulations nor in excess of established schedules. A *special allowance and grant may be made to duplicate a grant already made because the cash has been lost or stolen;* such duplicate allowance and grant is not reimbursable by the State." (Emphasis added.) In *Matter of Jones v Berman* (37 NY2d 42, *supra)* the court held that this provision

does not apply to an emergency application. The court quoted (p 54) from *Matter of Borders v Nassau County Dept. of Social Servs.* (34 AD2d 805, 806) as follows, " 'Since in an emergency the concern is to find a specific way in which to alleviate the crisis rather than to duplicate a grant, it would appear that emergency relief pursuant to section 350-j can be made available in selective situations without disturbing the non-duplication provisions of [18 NYCRR 352.2 (d)]' ''. Thus, the commissioner's reliance upon subdivision (d) of section 352.2 in denying petitioner's request was also improper. In addition, the court held *(supra,* p 55) that, "It is clear that the county's duty to provide assistance is not dependent upon the receipt of equivalent money from the State"; and that the fact that such replacement of lost cash is not reimbursable by the State does not relieve the county from granting the emergency assistance to such a recipient.

Despite such rulings contrary to the bases of respondents' determination, petitioner cannot qualify for emergency assistance until she establishes the existence of the circumstances provided in section 350-j of the Social Services Law, and in particular, that she was in need of such assistance to avoid destitution. *Matter of Jones v Berman (supra,* p 53) did not affect the necessity of making such a showing, for "the tremendous expense of this program places the burden upon the State, and its agents, to avoid the payment of grants to persons who are undeserving".

Petitioner contends that the record clearly establishes her destitution, and that, therefore, the denial of her request for emergency assistance was arbitrary and capricious and erroneous as a matter of law. "Where * * * a hearing is held, the determination must be supported by substantial evidence (CPLR 7803, subd. 4); and where a determination is made and the person acting has not acted in excess of his jurisdiction, in violation of lawful procedure, arbitrarily, or in abuse of his discretionary power * * * the courts have no alternative but to confirm his determination" *(Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222, 231).

The essential issues of fact before respondents were whether petitioner lost the $170 in cash, and if she did, whether such loss resulted in destitution for petitioner and her children. The commissioner apparently satisfied himself that the loss did occur, and his determination denying the requested relief

was based upon an alleged failure of petitioner to show that such relief was necessary to avoid destitution. This finding is not supported by substantial evidence.

"Those on welfare receive at best minimal benefits supplying unmet subsistence needs (see *Lascaris v Wyman,* 31 N Y 2d 386) and, accordingly, when a recipient is deprived of the proceeds of his assistance check, it follows that he is thereby rendered destitute absent alternative means of support, assistance from a collateral source, or other mitigating circumstances" *(Matter of Brown v Lavine,* 49 AD2d 49, 52). "Perhaps the foremost principle of the Federal AFDC program is that needy children must not be left without assistance to suffer the deprivation of basic essentials of life" *(Matter of Robertson v Lavine,* 71 Misc 2d 757, 759).

Petitioner was unemployed at the time of the hearing and had two dependent children. She needed $300 per month* to live at a subsistence level, and of that amount she only had $98.35 (plus a "presumed" prior earning of $31.20) and a further unspecified amount of assistance from her mother (see 18 NYCRR 351.2 [e]) available to her to meet her basic needs. That such a situation constitutes destitution cannot be questioned. It is of no consequence that petitioner's landlord was not threatening eviction or that petitioner was not threatened with a shut-off of utilities, for there are specific allowances which may be made to prevent such deprivations (see 18 NYCRR 352.7 [g] [5] and [g] [7]).

The statutes and court decisions compel the conclusion that the loss of the proceeds of an assistance check in and of itself renders the recipient destitute, absent alternative means of support, assistance from a collateral source or other mitigating circumstances. If subsistence needs are unmet, unquestionably the recipient is rendered destitute and emergency assistance must be granted to avoid this destitution.

If the commissioner had made a finding that petitioner had not lost the cash, a different case would be presented. Having found that the cash was lost, however, the commissioner was compelled to make a finding of destitution, absent evidence of other means of support or assistance.

Petitioner also contends that respondents' denial of her

---

* This is consistent with section 131-a of the Social Services Law, which provides that a three-member household is entitled to a monthly grant of $200 plus a shelter allowance, which in this case is $100 a month.

request for replacement of lost cash without a showing of destitution is arbitrary, capricious and erroneous as a matter of law in view of regulation 18 NYCRR 352.7 (g)(1)(i) which provides for replacement of lost or stolen checks without a showing of destitution, on condition that the applicant sign an affidavit of loss, that payment of the check be stopped and that the loss be reported to the police. Note, on the other hand, that regulation 18 NYCRR 352.2 (d) merely gives the department discretionary power to make a special allowance or grant "to duplicate a grant already made because the cash has been lost or stolen".

Subdivision (d) of section 352.2 of the regulations does not relate to emergency assistance and so it is of no help to petitioner herein. Even if it were applicable, however, petitioner's argument that the distinction between the replacement of lost cash (18 NYCRR 352.2 [d]) and of lost checks (18 NYCRR 352.7 [g] [1] [i]) denies her equal protection of the law is without merit. In *Matter of Brown v Lavine* (49 AD2d 49, 51, *supra)* the Third Department so ruled, stating, " 'Equal protection does not require that all persons be dealt with identically' *(Baxstrom v Herold,* 383 U. S. 107, 111), and the State's understandably great fiscal concern with lost or stolen cash upon which, unlike a check, payment cannot be stopped provides ample justification and a rational basis for the diverse procedures embodied in these regulations (cf. *Jefferson v Hackney,* 406 U. S. 535)."

The distinctions between lost checks and lost cash are obvious; they relate to the credibility of the witness and the proof of actual loss. When a check is lost, payment of the check can be stopped if the loss is promptly reported. A fraudulent claim for a duplicate check is readily susceptible of detection, if both checks are cashed, by studying the endorsements (see, e.g., *Griffith v Wyman,* 39 AD2d 874, 875). If it is established that the recipient endorsed and cashed an allegedly lost or stolen check which has been replaced, the amount of the check may be recovered from the recipient (18 NYCRR 352.7 [g] [1] [iii]). However, there is no way to verify the loss of cash after a check has been cashed, except by testing the veracity of the recipient. Payment of lost cash, unlike a lost check, cannot be stopped to avoid a duplicate payment of the allowance. Furthermore, with the loss of cash the recipient, as in this case, may be deprived of only a portion of her allowance, and a showing must be made of the

exact amount of loss, which obviously is unnecessary with a lost check. There is, therefore, a rational basis and ample justification for treating a lost check differently from lost cash.

In the case either of a lost check or of lost cash, however, it may be that the recipient will be found to need less than a complete replacement of the loss. The affirmative obligation of the commissioner "to avoid the payment of grants to persons who are undeserving" *(Matter of Jones v Berman,* 37 N Y 2d 42, 53, *supra)* mandates that the commissioner, in examining the credibility of the recipient and the proof of actual loss, also analyze the recipient's immediate needs on the issue of destitution to determine what portion, if any, of the lost cash need be replaced. If the recipient has received alternative means of support or assistance from a collateral source, such assistance and support must also be taken into account *(Matter of Brown v Lavine,* 49 AD2d 49, *supra;* 18 NYCRR 351.2 [e]), and if it is found that because of such other assistance and support the recipient has not been rendered destitute by the loss of cash, then he is not entitled to the replacement of the lost cash. Once a showing of destitution is made, replacement of the amount of cash which is shown to have been lost should be required to the extent necessary to avoid destitution, and in this manner the recipient will be adequately protected. Such an analysis of the recipient's needs is not and should not be limited exclusively to the replacement of lost cash, for the commissioner has the same affirmative obligation in replacing lost checks to avoid payments to undeserving persons. In the case of lost cash, the commissioner's inquiry to ascertain the amount of the loss is more likely to disclose the facts concerning the recipient's destitution, that is, alternative means of support; but in the case of a lost check such facts may also come to the commissioner's attention, and he should be guided thereby. Thus, in theory and in practice, a showing of destitution, or, more properly, a showing of lack of alternative means of support and assistance, is necessary before either a lost check or lost cash may be replaced. In this respect we express disagreement with cases which have stated that replacement of a lost check should be automatic (see *Matter of Allen v Lavine,* 82 Misc 2d 680).

Accordingly, the determination of the commissioner's denying emergency assistance to petitioner should be vacated and the matter remitted for a further hearing: (1) to determine the amount of assistance that petitioner received from her

mother; and (2) with instructions to respondents to grant to petitioner for the month of February, 1975 emergency assistance in an amount equal to the difference between the $170 lost and the amount of assistance that she received from her mother.

MOULE, J. P., CARDAMONE, SIMONS and GOLDMAN, JJ., concur.

Determination unanimously annulled with costs and matter remitted to respondents for further hearing and determination in accordance with opinion by WITMER, J.

