John F. Scileppi, J.
This is an article 78 proceeding to review and annul the determination of the respondents commissioners denying the petitioner’s application for a full public assistance grant; to direct the payment of such grant, and to prohibit the recoupment of an additional allowance previously paid.
The petitioner alleges, and the respondents do not deny, that she is eligible for public assistance in the category of Aid to Dependent Children. She had previously applied for such assistance, was granted it, and is still receiving it. In addition, she had been given an advance allowance, which was to be used either to prevent her eviction or to re-house the family. Such an allowance is permissible under the regulations of the New York State Department of Social Services, provided the recipient agrees to a reduction in her periodic public assistance payments over the next six months equal to the amount of the advance allowance. (18 NYCRR 352.7 [g] [7].) The petitioner contends that this regulation violates the equal protection clause of the United States Constitution, and that it also is in violation of the Federal Social Security Act (US Code, tit 42, § 601 et seq.) and the regulations promulgated thereunder by the United States Department of Health, Education and Welfare ("HEW”) (45 CFR 233.20).
*121 The facts of this matter are substantially not in dispute. The petitioner and her family were being evicted from their apartment for nonpayment of rent. Accordingly, the petitioner was given an advance allowance pursuant to the regulation in question. However, the landlord refused to accept any back rent, and they were evicted anyway. The advance allowance money was then used to re-house the family. The petitioner objected to the recoupment of the advance allowance, and she asked for a departmental hearing. The record of that hearing is unavailable but it apparently is not important. The petitioner has never explained why she fell behind in her rent or why she was unable to pay her rent out of her regular assistance grant. It is her contention that these questions are not important. She argues that, under the Federal law and regulations, a recipient of public assistance in the category of aid to dependent children may squander the regular periodic assistance grant, and then obtain more money for unpaid rent, without having to repay any of that extra allowance, all in the name of the needs of the innocent children. The respondents, of course, do not share this view. They point out that this petitioner has never explained why she fell behind in her rent and they claim that she has done this before, costing the department over $1,000 in money paid out for evictions and re-housing. The petitioner, in rebuttal, contends that her past history should be disregarded in the instant proceeding.
The petitioner has submitted a 26-page brief in support of this proceeding, dealing primarily with her version of the spirit of the Federal public assistance laws. She emphasizes the principle that eligibility for assistance is based solely on need, which, in turn, is calculated on the basis of currently available income and resources vis-á-vis the minimum standards of need established by each State. When a person’s currently available income and resources do not equal the minimum standards of need, then that person, she claims, is entitled to public money, all other considerations being irrelevant. She takes the position that the New York recoupment regulation, in reducing a recipient’s mathematically established periodic grant, upsets that balance and thus violates the spirit of the public assistance laws. Nowhere in the voluminous brief of plaintiff’s counsel is there a mention of the possibility of fraud.
I do not dispute the petitioner’s legal arguments concerning the tenor of the public assistance laws, nor do I disagree with *122 the formula for need established by Federal law and binding upon the States. However, as I will demonstrate, none of the cases supports her contention that 18 NYCRR 352.7 (g) (7) is either unconstitutional or otherwise contrary to Federal law.
The United States Supreme Court decisions cited by the petitioner contain merely the general spirit of the public assistance laws. None of them involved 18 NYCRR 352.7(g)(7) specifically, and none of them has invalidated that regulation. In fact, the Supreme Court made that very observation in Hagans v Lavine (415 US 528), noting that the constitutionality of 18 NYCRR 352.7 (g) (7) had been raised in the lower courts, but was not reached by the Supreme Court. In the long history of Hagans v Lavine, the United States District Court for the Eastern District of New York has twice held the regulation in question unconstitutional, and has twice been reversed by the Second Circuit on other grounds. Right now, the case is on remand to the Eastern District again. Thus, Hagans v Lavine is not authority for the petitioner’s contentions. As for the rulings of other Federal trial courts cited by the petitioner, they are, of course, not binding on this jurisdiction, and I reject them, because I disagree with them in every respect.
At this juncture, I will separate the question of whether or not 18 NYCRR 352.7 (g) (7) is unconstitutional from the question whether or not that regulation is otherwise in violation of the Social Security Act or the rules promulgated thereunder. As I mentioned above, the regulation’s constitutionality is currently still being tried in the Federal courts of this jurisdiction. Moreover, as will be seen below, the courts of this State have interpreted this regulation on more than one occasion and have never found it unconstitutional. Accordingly, I hold that 18 NYCRR 352.7 (g) (7) is not unconstitutional for being in contravention of the equal protection clause of the United States Constitution.
The strongest authority for the petitioner’s contentions is a case recently decided in this department, Matter of Dunn v Bates (50 AD2d 561) decided on November 3, 1975, where the court wrote: "We are of the opinion that 18 NYCRR 352.7(g)(7) is invalid as written in that it fails to limit recoupment so as to avoid 'undue hardship’. Such a provision is at variance with both Federal and State guidelines for the recovery of overpayments of public assistance * * * and violates the letter and *123 spirit of the ADC program by punishing children financially for their parents’ misdeeds”.
At first reading, it might appear that this decision conclusively establishes the petitioner’s right to relief. However, a later case in the First Department has reconciled Matter of Dunn v Bates with reality. In Matter of Reyes v Dumpson (51 AD2d 903) decided on March 1, 1976, the First Department read 18 NYCRR 352.7(g)(7) in conjunction with 18 NYCRR 352.31(d) which reads, in pertinent part:
"(d) Recoupment of overpayments. (1) Except as provided in paragraph (2) of this subdivision, recoupment of overpayments of assistance including overpayments resulting from assistance paid pending a hearing decision shall be treated as follows:
"(i) Recoupment shall be limited to overpayments made during the 12 months preceding the month in which the overpayment was discovered.
"(ii) Recoupment of any overpayment made to a recipient shall not be required unless the recipient has currently available income or resources, exclusive of the current assistance payment. Exempted income and disregards shall be considered as being currently available.
"(2) Where overpayments were occasioned or caused by a recipient’s willful withholding of information concerning his income, resources, or other circumstances which may have affected the amount of the public assistance payment, recoupment of prior overpayments from current assistance grants shall be made irrespective of current income and resources. In such cases, recoupment shall not be limited to overpayments made during the 12 months preceding the month in which the overpayment was discovered. * * *
"(4) The proportion of the current assistance grant that may be deducted for recoupment purposes shall be limited on a case-by-case basis so as not to cause undue hardship, and in no case shall exceed 10 percent of the household needs, and shall continue until such time as the excess payments have been recovered, except that where two or more recoupments are made simultaneously for different reasons or arising from different circumstances, the total reduction in the assistance grant shall not exceed 15 percent of the household’s needs. In the event the amount required to be reduced hereby is greater than the amount of the current grant payments, such pay *124 ments shall be withheld until the amount of the excess grants has been recouped.”
In Matter of Reyes v Dumpson, the court found that the recipient had failed to disclose the receipt of certain unemployment insurance benefits. He also failed to apply any part of his periodic assistance allowance to the payment of rent, resulting in his eviction. Consequently, the petitioner received two notices from the New York City Department of Social Services; one proposing to reduce his grant to recoup overpayment caused by his concealment of information, and the other proposing to reduce his grant still further to recoup the advance allowance for rent. The court noted that, under the regulations involved, the reduction in grant to recoup overpayments caused by willfully withholding information was limited to 10% of the recipient’s household needs; whereas a reduction in grant to recoup advance allowances for rént has no such limitation. The court recognized, and I wholeheartedly concur, that a public assistance recipient may need an advance allowance for rent through no fault of his own, due to some unfortunate or unexpected situation. Thus, the First Department observed that, under the current regulations, a recipient may be penalized more harshly in a situation where he bears no fault than in a situation in which he is guilty of wrongdoing. Accordingly, the court in Matter of Reyes v Dumpson (51 AD2d 903, 904, supra) reached this conclusion: "Hence, respondent’s regulations pertaining to repayment of an advance allowance (18 NYCRR 352.7 [g] [7]) are invalid as arbitrary. Repayment of an advance allowance should not be accorded harsher treatment than recoupment of overpayments made to a client because of fraud, and therefore recovery in the case at bar should be limited to 15% of petitioner’s current assistance grant (accord Matter of Dunn v Bates, 50 AD2d 561).” Thus, the First Department, rather than invalidate 18 NYCRR 352.7(g)(7) altogether, has held that the recoupment provisions of that regulation are subject to the same percentage limitations contained in 18 NYCRR 352.31(d). This, I feel, is a rational interpretation of Matter of Dunn v Bates, and I subscribe to it.
Although I am bound by the decision of the Second Department in Matter of Dunn v Bates, I am personally impressed with the position taken by the Third Department on 18 NYCRR 352.7 (g) (7) in Matter of Adkin v Berger (50 AD2d *125 459) decided on January 22, 1976, and I will set forth that decision in some detail.
"[W]e are concerned here with recipients who, having already received assistance payments to cover their normal rent and utility costs, have sought and received additional sums for these same expenses, the original moneys supplied therefor being unavailable. It is to be noted that no satisfactory reason or excuse was presented by petitioners to explain the unavailability of the funds originally provided for the normal rent and utility bills. Furthermore, the recipients were notified that the advances would be recovered by subsequent installment deductions from their regular assistance grants and thus alerted to budget their funds accordingly. Neither mandated by nor conflicting with other Federal or State laws or regulations, this program of advance payments provides an effective means whereby petitioners and others similarly situated can allocate a greater proportion of their public assistance grants to the times when they are in greater need and yet, because of the subsequent recovery of the advances, receive no more than their proportionate share of the limited assistance funds available. As such, the program plainly provides a beneficial service in a reasonable manner, and it should be sustained.
"In reaching this decision, we are not unmindful of the language of the Court of Appeals in Baumes (supra) to the effect that emergency assistance would be available to needy families with children who, in an emergency situation, are threatened with eviction or a utility cut-off. What we cannot accept is that the present petitioners are in such an emergency situation because the record contains no evidence of 'sudden and unexplained emergency events’, but rather indicates that petitioners were unable to meet 'the anticipated demands created as a result of everyday life’ (Baumes, supra), namely, the regular rent and utility bills. No extraordinary circumstances are presented to explain petitioners’ troubles, and furthermore, since funds have been made available to them under the challenged regulations, petitioners are not without resources to overcome their present difficulties. Accordingly, were we to hold otherwise and rule that the advances are not recoverable, we would be needlessly encouraging fraud and mismanagement in the handling of assistance moneys by the recipients thereof and also undermining the flat grant method of providing assistance which was designed *126 to uphold the dignity of individual recipients by permitting them to control their own affairs.” (pp 461-462).
The Court of Appeals decision cited in Matter of Adkin v Berger (supra) Baumes v Lavine (38 NY2d 296) decided December 4, 1975, is analogous to the instant situation. In that case, the petitioners, recipients of public assistance in the category of aid to dependent children, sought to obtain emergency assistance under section 350-j of the Social Services Law for the purchase of furniture to replace furniture which had undergone the natural deterioration of time. The court dismissed the petition, and wrote as follows (pp 304-305): "Section 350-j was enacted to apply to sudden and unexplained emergency events * * * and not to remedy the anticipated demands created as the result of everyday life. It was not designed to replace furniture merely worn by normal use such as is the case here, but where emergency or catastrophe suddenly affects the family or individuals involved. To so hold would violate the concept of semimonthly flat grants to welfare recipients and inundate the Department of Social Services with requests for additional assistance to meet the everyday needs for which the vast population, also on fixed incomes, have learned to budget and expect.”
In consideration of all the authority cited above, I feel that a proper interpretation of 18 NYCRR 352.7(g)(7) in the instant matter is as follows: I reject the petitioner’s contention that the reason why she fell behind in her rent is unimportant. I think that reason is crucial. If she was unable to pay her rent because of some unanticipated circumstances involving no fault of her own, then the reasoning of Matter of Dunn v Bates (50 AD2d 561, supra) would be applicable, and the Department of Social Services would not be entitled to any recoupment. If, on the other hand, she squandered her regular public assistance grant on nonessential items instead of using it for rent, and then failed to disclose this to the Department of Social Services, then she would have received an overpayment "caused by a recipient’s willful withholding of information concerning his income, resources, or other circumstances which may have affected the amount of the public assistance payment” (18 NYCRR 352.31 [d] [2]). In such a case, the department may recoup such overpayment "irrespective of current income and resources”, so long as the amount of each periodic recoupment deduction does not exceed 10% of the household needs. (18 NYCRR 352.31 [d] [4].) In the instant *127 matter, since the petitioner has failed to give any reason why she fell behind in her rent, she has failed to sustain her burden of proof in this regard. Thus, I hold that the respondents are entitled to recoup the advance allowance given to this petitioner by regular deductions from her periodic public assistance grant, provided such deductions do not exceed 10% of her household needs.
In reaching this decision, I am by no means unmindful of the needs and rights of neglected children. The applicable regulation (18 NYCRR 352.31 [d] [4]) provides that recoupment for overpayment shall be handled on a case-by-case basis to prevent undue hardship. I am, of course, concerned that certain welfare recipients, even though they can manipulate the intricacies of the Social Services Law to their own advantage, outfoxing some lawyers and some courts, may nonetheless lack the resources to provide physical nourishment to their children. However, I am also concerned that such people lack the resources to provide their children with moral nourishment. I feel that the interpretation of the law propounded by the respondents herein pays some needed attention to the realities of the problem, whereas the pollyanna approach that would continue to give public money to families whose parents operate outside the law does violence to the real purpose of public assistance. The irresponsibility of the parents may not be used as a device to obtain public assistance payments to which they are not justly entitled, thereby diminishing the fund available to those who really need it.
With respect to the question whether the petitioner’s written consent to the reduction in her periodic assistant grant was voluntary or coerced, I hold that it was voluntary, since she presented no evidence to the contrary. I reject the petitioner’s argument that all such written consents by all people similarly situated are involuntary. (Hagans v Wyman, 527 F2d 1151.)
In light of my decision herein in favor of the respondents, the ancillary question of whether the respondent State Department of Social Services is at all responsible for advance allowances is moot.
(Supplemental decision May 25, 1976)
This is a supplemental decision, issued sua sponte, to my original decision of April 29, 1976, which denied the petitioner’s request to annul the respondents’ determination reducing her public assistance grant.
The thrust of the original decision was to sustain the *128 validity of a particular regulation of the New York State Department of Social Services (18 NYCRR 352.7 [g] [7]), so long as the amount of each periodic recoupment deduction authorized thereby does not exceed 10% of the recipient’s household needs. In addition, I rejected the petitioner’s arguments that all written consents required by that regulation are inherently involuntary. Those two holdings, I hereby reaffirm in all respects.
However, I also wrote that recoupment might not have been allowed under the regulation in question if the petitioner had demonstrated to the satisfaction of the agency that the rental arrears were caused by some unusual circumstance. I also indicated that, on the facts of a particular case, the written consent of the recipient might be deemed coerced. I then ruled that this petitioner had failed to establish her burdens on these questions, since no such arguments were presented to the court, and since, in any event, the transcript of the agency hearing was unavailable.
I have now been made aware that the transcript of the hearing is available after all, and I feel that it should be considered to see what the petitioner said, even though her arguments were all based on the validity of the regulation. Unfortunately, even after studying the transcript, I am unable to determine the relevant facts. The record is rather sparse, and it is interrupted in key places because the petitioner’s response was unintelligible on the tape recording. Accordingly, my original decision is hereby modified to the extent that this matter is remanded to the appropriate agency for a rehearing to determine, specifically: (1) why the petitioner’s rent was in arrears, which, in turn, depends on what she did with her regular rental allowance; and (2) whether or not her written consent to the recoupment was coerced.
I am well aware that the calendars of the hearing officers are quite heavy, and that the hearings must necessarily be short. Moreover, I realize that testimony is preserved by means of tape recorders only, since the cost of stenographers would be prohibitive. Nevertheless, I urge the hearing officers to bear in mind that the testimony taken by them may have to be scrutinized by a Judge and a determination made as to its legal sufficiency. Accordingly, I urge them to make every effort to establish an adequate record by making sure that the recipient’s testimony is intelligible, and that it is responsive to the legal issues involved.
*129 In view of this supplemental decision, I have not signed the proposed judgment submitted by the respondents herein.