Joseph G. Fritsch, J.
In this article 78 proceeding the petitioner challenges the decision after a fair hearing held February 2, 1976. The State Commissioner of Social Services affirmed the local agency’s decision both as to the method used to compute and prorate petitioner’s monthly shelter allowance and as to the grant, given the agency as an advanced allowance rather than as emergency assistance, of moneys to pay utility arrears, to prevent their shutoff.
The petitioner is the mother of four minor children, who were receiving a grant of public assistance from the County of Monroe under the Federally subsidized category of Aid to Families with Dependent Children (AFDC). This grant was paid to the petitioner and her four children up to about September 16, 1975. Thereafter, the petitioner’s grant was reduced when her 11-year-old son, the oldest of the four, began to receive Social Security survivor’s benefit in the amount of $200 per month as a result of his father’s death. By reason of this benefit the 11-year-old son, as a self-supporter, was required to contribute a portion of his award toward his *920 living expenses including the rent paid for the premised where he resided with his mother and her three other minor children.
First, the petitioner contends that the method used and the amount prorated for her rental allowance by the local agency, which was affirmed at the fair hearing, is incorrect and should have, in fact, been prorated based on the actual rent being paid of $200 per month, allowing her $160 as rental allowance rather than prorated on the agency’s schedule of máximum rental allowance for five persons which was $187. Section 352.3 of the regulations of the New York State Department of Social Services (18 NYCRR 352.3) concerns the amounts and methods for computing rental allowances for persons receiving public assistance. Subdivision (a) thereof (18 NYCRR 352.3 [a]) provides "Each social services district shall establish a monthly allowance schedule for rent * * * An allowance for rent shall be made in the amount actually paid by the recipient but not in excess of the appropriate maximum of such schedule”. Subdivision (c) of this regulation (18 NYCRR 352.3 [c]) provides: "For children or adults in receipt of public assistance residing with a non-legally-responsible person, the allowance for rent and other shelter costs shall be computed on a prorated basis but not in excess of the appropriate district maximum for the number of persons in the assistance grant”.
The rent allowance schedule established thus becomes a ceiling on the allowance otherwise payable and the local district in prorating the shelter allowance must make its computations based on the amount of rent actually being paid, and then must pay to the recipient the amount so computed provided such amount does not exceed the scheduled maximum. (See Matter of Morning v Wyman, 39 AD2d 645, and Matter of Noto v Lavine, 71 Misc 2d 106; see, also, Matter of MacGaffick v Lavine, 45 AD2d 928.) The regulations therefore compel the granting of a shelter allowance on the basis of the recipient’s actual share of the total shelter cost, provided that share does not exceed the maximum allowable in accordance with the established shelter allowance schedule.
Here the actual rent being paid was $200 and prorated into fifths, there being five persons in the household, establishes the rent share per person at $40; a total of $160 for the four aid for dependent children recipients. Since this amount of $160 does not exceed the established monthly allowance sched *921 ule for rent of $187, it is the amount of rent allowance to be paid the petitioner. The local agency in March of 1976, after the fair hearing, did correctly prorate the petitioner’s rent by this same method using actual rent rather than the maximum allowed in the district’s schedule (see Budget Agency’s worksheet dated March 11, 1976), then apparently gave the shelter allowance computed by the method challenged by petitioner here and at the fair hearing. The determination of the shelter allowance as made by the respondents is improper and illegal, and is vacated, and is remitted to the commissioner for disposition in accordance with this opinion.
The second challenge and contention of the petitioner in this proceeding is that the denial of her request for emergency assistance made in order to prevent a utility shutoff was illegal, arbitrary and capricious.
It appears from the pleadings and the transcript of the fair hearing that on or about October 16, 1975 the agency granted the petitioner $162.93 to be paid to the Rochester Gas & Electric Corporation to prevent the termination of the gas and electric service in the family’s residence. This grant was made as an advance allowance to be recouped over a six-month period from the petitioner’s budget. The petitioner requested an emergency grant that would not have to be repaid from her future allowances, but was refused, being told that this was not allowed. Petitioner then requested in writing that an "advance payment” be made, and it was. She challenges here the recouping by the agency of the $162.93 maintaining that she was eligible for the emergency grant since she did not have sufficient funds to pay the utility arrears, and that she was not advised of the availability of emergency assistance pursuant to section 350-j of the Social Services Law.
There can be no emergency assistance without a showing of destitution and the petitioner has the burden of proof to show that she is in need of emergency assistance to avoid destitution. (See Matter of Champion v Lavine, 50 AD2d 183.) Section 350-j of the Social Services Law, covering the emergency situation, " 'was enacted to apply to sudden and unexplained emergency events * * * and not to remedy the anticipated demands created as the result of every day life’ ”. (See Baumes v Lavine, 38 NY2d 296, 304.) The record here contains no proof of budgetary inadequacies as was present in the case of Matter of Bryant v Lavine (79 Misc 2d 425, affd 49 AD2d 673), or of " 'sudden and unexplained emergency events’ ” but *922 rather that the petitioner was unable to meet " 'the anticipated demands created as a result of every day life’ ”, namely, the regularly occurring utility bills for which allotments were made to her. (See Matter of Adkin v Berger, 50 AD2d 459, 462; Baumes v Lavine, supra.)
No extraordinary circumstances were shown to exist and since an advance payment, which is not in violation of Federal and State law, was made to petitioner (see Matter of Alexander v Berger, 87 Misc 2d 119; see, also, Hagans v Berger, 536 F2d 525), and was available to her. She was not without resources and, therefore, was not eligible for emergency assistance. (See State Commissioner’s Administrative Letter, Transmittal No. 75 ADM-86; also 18 NYCKR 352.7 [g] [5].)
The acts of the respondents were not illegal, arbitrary, or capricious and the decision to make petitioner an advance payment for the payment of utilities and require its recoupment rather than an emergency grant is sustained, and the petition as to this challenge is dismissed.
Submit judgment accordingly.