OPINION OF THE COURT
John S. Lockman, J.
This is one of a series of applications numbering, between motions and cross motions, almost 20, all of which deal with the same aspects of public assistance grants in the category of Aid to Dependent Children. (US Code, tit 42, ch 7, subch 4; Social Services Law, art 5, tit 10.)
*942 Petitioner seeks an order annulling a determination after fair hearing by respondent Blum (CPLR art 78) and a declaratory judgment invalidating the rules of the New York State Department of Social Services with respect to the recovery of advance utility payments (18 NYCRR 352.7 [g] [5]; CPLR 3001) as well as the procedure employed by the Nassau County Department of Social Services in recovering such payments pursuant to 18 NYCRR 352.29 (e).
FACTUAL BACKGROUND
Petitioner Katherine Achey and her three minor children are currently receiving public assistance in the category of Aid to Dependent Children. Having previously received such assistance between June 27,1978 and January 15, 1979, during the interval between January 15, 1979 and their restoration to the public assistance rolls on December 12, 1979 they were not the recipients of aid in this or apparently in any other category. After their restoration to the relief rolls, in January of 1980 their utility supplier, the Long Island Lighting Company (LILCO), threatened to discontinue service because of nonpayment. Petitioner sought help from the Nassau County Department of Social Services. The department agreed to make an advance to forestall a utility shutoff pursuant to 18 NYCRR 352.7 (g) (5) provided petitioner signed the following written request: “I request that the Department of Social Services pay four months’ LILCO arrears to prevent shut-off. I understand that this amount will be recovered at the rate of 10% of my total needs per month, or over a period of six months, whichever reduction is less. This recoupment will not cause undue hardship. I understand that all future LILCO bills will be paid by the Department and deducted from my next recurrent grant.” Between January and April of 1980 petitioner’s grants were reduced by virtue of the department’s recovery of the sum thus advanced as well as to recover certain sums paid directly to LILCO between May 3, 1978 and September 8, 1978 on behalf of the petitioner who was at that time receiving public assistance. The reductions ceased in April but in July of 1980 the department notified petitioner that it proposed further reductions to recover sums paid directly to LILCO on her behalf between November 4, 1978 and *943 February 28, 1979 as well as funds advanced for utility expenses between September 5, 1979 and January 7, 1980 and between January 7, 1980 and May 5, 1980. Petitioner requested a fair hearing to contest these deductions and the hearing was held on September 29, 1980. Respondent Blum issued her decision on October 16, 1980. She determined that the Nassau County Department of Social Services had erred in its application of 18 NYCRR 352.7 (g) (5) in certain respects, but upheld its recovery of utility advances pursuant to 18 NYCRR 352.29 (e). It remanded the matter to the department to recompute its proposed recoveries in light of the decision. It is this decision which petitioner seeks to annul.
ADVANCES TO FORESTALL SHUTOFF AND EMERGENCY GRANTS
It has justly been observed that the rules and regulations governing public assistance at both the State and Federal levels now rival the Internal Revenue Code in complexity. (Lynch v Philbrook, 550 F2d 793, 795; Davis v Smith, 431 F Supp 1206,1211.) The linguistic terrain is characterized by euphemism and neutrality so as to match in blandness the architecture of public housing. Some complexity and tedium may be avoided, however, by narrowly circumscribing the area of inquiry.
Emergency grants are made to applicants for public assistance to prevent utility shutoffs pursuant to 18 NYCRR 352.7 (g) (4). Advances are made to recipients of public assistance for the same purpose pursuant to 18 NYCRR 352.7 (g) (5). Advances pursuant to 18 NYCRR 352.7 (g) (5) are recoverable, but emergency grants pursuant to 18 NYCRR 352.7 (g) (4) are not. (See Matter of Adkin v Berger, 50 AD2d 459, affd 41 NY2d 1030; Gyder v Blum, 68 AD2d 714; Social Services Law, § 350-j.) Respondent Blum found that the Nassau County Department of Social Services had misapplied these sections in calculating the amount to be recovered from petitioner in that it was seeking to recover sums she received to forestall shutoff pursuant to 18 NYCRR 352.7 (g) (4) while not a recipient of assistance. The matter was therefor remanded to the department. By virtue of such remand as well as CPLR 7804 (subd [g]) petitioner’s challenge to the decision after hear *944 ing may not be considered. (Matter of Ridgel v Lavine, 77 Misc 2d 21.)
Petitioner not only contests the manner in which 18 NYCRR 352.7 (g) (5) has been applied, she contends that the regulation is in conflict with Federal law and should be declared invalid. Such a contention is one which this court may entertain. (See Erie County v Whalen, 57 AD2d 281.)
RECOVERING ADVANCES
Upon first consideration the logic of recovering sums advanced to forestall utility shutoffs from future benefits seems compelling. Life is never so simple, however, and once some thought is given to the policies and assumptions underlying Aid to Dependent Children, it becomes apparent that the recovery of funds advanced from future recurring grants does pose some problems.
“AFDC was enacted in order to aid needy children, to strengthen the family unit, and to enable recipients ‘to attain or retrain capability for the maximum self-support and personal independence.’ [US Code, tit 42, § 601.] The focus of the program is the child [King v Smith, 392 US 309] and meeting the needs for adequate subsistence, to be provided in the child’s own home.
“These statutory purposes may not be threatened by recoupment when the recipient has assets other than the current grant. Recoupment from the current grant, however, presents a different situation. In this instance, the family has nothing but the grant. If the state pays 100% of need, reducing the grant below that level forces the family to live below the minimum standard of living necessary for health and decency.” (Howard, Recoupment of Overpayments in AFDC: Misguided Policy and Misread Statute, 75 Northwestern U L Rev 635, 661-662.)
Petitioner contends that the State may only recover advances from “income or resources exclusive of the current assistance payment” under applicable Federal law. (23 CFR 233.20 [a] [12] [i] [A] [1].) 18 NYCRR 352.7 (g) (5) which provides for the recovery of advances to forestall utility shutoffs is not so limited. “(5) For a recipient of public assistance, an advance allowance may be provided to pay for utilities already furnished * * * to prevent a *945 shutoff or to restore services. Such an allowance shall not exceed the cost of such utilities for the four-month period immediately preceding the advance payment, and may be provided only where the recipient has made a request in writing for such an allowance, and has also requested in writing that his monthly grant be reduced in such amounts as not to cause undue hardship.” No single recovery deduction pursuant to 18 NYCRR 352.7 (g) (5) may exceed 10% of the household’s needs. In the case of multiple recoveries the maximum is 15% of the household needs. Petitioner argues the formulaic limitation in 18 NYCRR 352.7 (g) (5) is not adequate compliance with 23 CFR 233.20 and section 602 of tit 42 of the United States Code.
18 NYCRR 352.7 (g) (7) closely parallels 18 NYCRR 352.7 (g) (5) except that it deals with advances to forestall eviction and foreclosure. 18 NYCRR 352.7 (g) (7) was challenged on essentially the same grounds as 18 NYCRR 352.7 (g) (5) is now challenged and the lengthy litigation reached as far as the United States Supreme Court. (Hagans v Wyman, 462 F2d 928, reh after remand 471 F2d 347., revd and remanded sub nom. Hagans v Lavine, 415 US 528.) In ultimately sustaining the regulation the Second Circuit Court of Appeals held: “We see nothing therefore in the Act [US Code, tit 42, ch 7, subch 4] which prohibits expressly or by implication the procedure of advances and recoupment provided by the Regulation. On the contrary, as the Supreme Court cases to which we have referred indicate, the State has broad latitude in setting the standard of need and the level of benefit. A fortiori the timing of the payment of that allowance, which is made at the recipient’s written request and contains his consent to repayment, should not be beyond the power of the State. There is nothing in the Act to preclude it.” (Hagans v Berger, 536 F2d 525, 530.) In thus finding 18 NYCRR 352.7 (g) (7) compatible with Federal law, the court observed that there then existed a divergence among the various Appellate Divisions on the question. (Cf. Matter of Adkin v Berger, 50 AD2d 459, affd 41 NY2d 1030, supra; Matter of Dunn v Bates, 50 AD2d 561; Matter of Reyes v Dumpson, 51 AD2d 903; see, also, Matter of Alexander u Berger, 87 Misc 2d 119.) “The matter has apparently not yet been litigated *946 in the New York Court of Appeals and, in any event, we would not be bound by a state court’s determination that a state regulation was or was not in conflict with the Act.” (Hagans v Berger, supra, at p 531.) The Second Circuit Court of Appeals having found 18 NYCRR 352.7 (g) (7) valid and not in impermissible conflict with Federal law, 18 NYCRR 352.7 (g) (5) which differs only in that it deals with advances to prevent utility shutoffs rather than to prevent eviction or foreclosure must also be valid and enforceable.
BIMONTHLY BILLING
Pursuant to petitioner’s request for an advance to prevent a utility shutoff, respondent Nassau County Department of Social Services has been paying petitioner’s utility bills directly and deducting the amount of the advance from petitioner’s next recurring grant. While such a procedure has been previously sustained (Matter of Bethea v D’Elia, 73 AD2d 620), it appears that the advances and their recovery were made on a monthly basis. Here petitioner receives bimonthly utility bills. The bills are paid directly and the full amount of the bimonthly bill is then deducted from the next recurring grant pursuant to 18 NYCRR 352.29 (e) which provides: “(e) When an item, such as utilities, is paid by voucher or restricted grant, the amount paid shall be deducted from the ensuing regularly recurring cash grant.” Petitioner does not appear to object to the direct payment program or the recovery of the moneys thus advanced. She argues, however, that under 18 NYCRR 352.29 (e) only one month’s utility payment should be recovered from the next ensuing grant so as to avoid the hardship of having a bimonthly payment deducted from a single month’s grant. The Nassau County Department of Social Services is apparently reluctant to undertake any bookkeeping responsibility in converting bimonthly bills into monthly recoveries and argues that if petitioner dislikes the present system, she can always pay her bills directly.
While the parties have occupied themselves in condemning each other’s darkness, they apparently failed to ask the Long Island Lighting Company if it provided candles. Less
*947 enigmatically, research on the issues of this case lead one to former subdivision 2 of section 15 of the Transportation Corporations Law. (Matter of Barroncini v Shang, 77 AD2d 803; Matter of Rivera v Berger, 89 Misc 2d 586, 593-594.) That subdivision was repealed as part of chapter 713 of the Laws of 1981, also known as the Home Energy Fair Practices Act. Among its purposes, the new act was intended to afford utility customers an opportunity to avoid terminations of service and to accomplish this it required utilities to make available deferred payment plans. (Governor’s Memorandum, McKinney’s Session Laws of NY, 1981, pp A-475 — A-476.) Contained in the new article 2 of the Public Service Law is section 38 which requires utilities to provide budget or levelized payment plans in accordance with rules and regulations to be promulgated by the Public Service Commission. Interim rules and regulations were promulgated on October 14,1981 and may be secured from the Public Service Commission. Section 11.11 of the interim rules provides generally “Every utility shall offer residential customers a voluntary budget billing or levelized payment plan for the payment of charges.” Whether these rules and regulations will be construed to require utilities to afford customers the opportunity to have monthly levelized bills has not yet been established. However, inquiry of the Long Island Lighting Company reveals that LILCO has a “Balanced Billing” plan of equalized monthly payments.
In short it appears that a solution to petitioner’s complaint lies within her grasp. She has the power to convert her utility billing to a monthly basis. If she does not do so, she cannot complain when advances to cover bimonthly bills are recouped in the manner in which they are being recouped. Thus, on this record there appears nothing improper in the implementation of 18 NYCRR 352.29 (e). Upon a showing that monthly billing is unavailable to petitioner, the court might be compelled to reconsider.
Petitioner’s application for relief pursuant to article 78 is denied. (CPLR 7804, subd [g].) Her action for a declaratory judgment finding 18 NYCRR 352.7 (g) (5) invalid and declaring the implementation by Nassau County of 18 *948 NYCRR 352.29 (e) improper is denied. The denial as to 18 NYCRR 352.29 (e) is without prejudice. The opposing papers submitted by respondent Blum and entitled a “Cross Motion” are deemed not a request for affirmative relief, but essentially only opposition to the relief sought by petitioner. Poor person relief is granted.