BARTLETT, Superintendent of Poor, v. ACKERMAN, Overseer of Poor.

(Supreme Court, General Term, Third Department. November 22, 1892.)

1. POOR PERSONS—WHO ARE.
   The facts that a woman having four small children dependent on her for support had but $135 when she was widowed, and immediately afterwards, for several months, was, because of sickness, unable to work; that the town, without question, furnished her assistance, as an object worthy of public charity,—are sufficient to support a finding that such woman was a poor person. within the meaning of Rev. St. (8th Ed.) p. 2106, § 14, which provides that "every poor person who is * * * sick, or in any other way disabled or enfeebled, so as to be unable by his work to maintain himself, shall be maintained by the county or town in which he may be."

2. SAME—REMOVAL—EVIDENCE OF INTENT TO SHIFT LIABILITY.
   Where a poor person selected a house in another county, and voluntarily removed thereto, the facts that the overseer of the poor of the town from which she removed paid her rent for six months, and otherwise provided for her wants after such removal, are not sufficient to show a violation by such overseer of Rev. St. (8th Ed.) p. 2117, § 58, which makes it unlawful for any person to remove a poor person from one town or county to another, with intent to make the latter chargeable with his support.

Appeal from judgment on report of referee.

Action by Dudley S. Bartlett, superintendent of the poor of Montgomery county, against Levi Ackerman, overseer of the poor of the town of Danube, Herkimer county. Defendant had judgment, and plaintiff appeals. Affirmed.

This action was brought by Abram P. Van Alstyne, who was afterwards succeeded in office by the present plaintiff, to recover certain expenditures made on account of Pauline Hanson, a poor person, and her minor children, alleged to have been removed from Danube, Herkimer county, to Minden, Montgomery county, in violation of Rev. St. (8th Ed.) p. 2117, §§ 58, 59, which read as follows:

"Sec. 58. Any person who shall send, carry, transport, remove, or bring, or who shall cause to be sent, carried, transported, brought, or removed, any poor or indigent person, from any city, town, or county to any other city, town, or county, without legal authority, and there leave such poor person, with intent to make any such city, town, or county to which the removal shall be made chargeable with the support of such pauper, or who shall entice any such poor person so to remove. with such intent, shall forfeit fifty dollars, to be recovered by and in the name of the overseers of the poor of the town to which such pauper shall be brought or removed, or in the name of the superintendents of the poor of the county into which the said poor person shall be removed, and shall, moreover, be deemed guilty of a misdemeanor, and on conviction shall be imprisoned not exceeding six months, or fined not exceeding one hundred dollars, or both, in the discretion of the court.

"Sec. 59. The pauper so removed, brought, or enticed shall be maintained by the county superintendents of the county where he may be. They may give notice to either of the overseers of the poor of the town from which he was brought or enticed, if such town be liable for his support, and if there be no town in the

county from which he was brought or enticed liable for his support, then to either of the county superintendents of the poor of such county, informing them of such improper removal, and requiring them forthwith to take charge of such pauper. If there be no overseers or superintendents of the poor in such town, city, or county, such notice shall be given to the person, by whatever name known, who has charge and care of the poor in such locality."

Rev. St. (8th Ed.) p. 2106, § 14, provides:

"Every poor person who is blind, lame, old, sick, impotent, or decrepit, or in any way disabled or enfeebled, so as to be unable by his work to maintain himself, shall be maintained by the county or town in which he may be. * * *"

Following is the opinion filed by C. M. Parker, referee:

"The contested questions in the case are, were Pauline Hanson and her minor children indigent persons, within the meaning of the statute, at the time alleged? And, second, were they removed from Danube to Minden with intent to charge the latter town, or the county of Montgomery, with their support?

"We find that Mrs. Hanson had lived with her husband upwards of two years, prior to May 31, 1890, in the town of Danube. She had four minor children. On May 31, 1890, her husband died. They had prior thereto rented and worked a small place, of about eighteen acres, which was owned by a Mr. Dell. Mrs. Hanson owned what was on the place, consisting of two cows, a horse, two pigs, and some produce. This property she sold during the summer, and realized about $135. Two weeks before her husband's death, she had been confined, and at the time of his death was still weak and sick and unable to work. The day of Mr. Hanson's death, she left her home, with her children, and went to one of the neighbor's, (Mr. Snell's,) and remained there until the funeral, June 3, 1890. From this time, for several months, she was weak and sick,—could only take care of her children,—and some of the time requiring an attendant to care for her. At the time of her confinement and attendant sickness, Dr. Young was her physician, and his bill for such service was afterwards audited and paid by the town board. The funeral expenses of Mr. Hanson were also audited and paid by the town board. The overseer of the poor at or about the time of the funeral told the undertaker that if Mrs. Hanson did not pay the expense, he (the overseer) would see that he got his pay. Enough appears from the evidence to give a pretty clear view of the situation. Mr. Hanson had no money when he died. Mrs. Hanson had no money, but she had the personal property above mentioned, and no other, except a little provision which she carried with her when she left. She was left with four small children, one newly born. She herself was unable to work. She immediately became dependent, and, as events proved, continued so for several months. The town, by its audit of Dr. Young's bill, incurred prior to Hanson's death, has admitted that she was then a worthy object of public charity. Afterwards, in July, the overseer did not raise any question as to her condition, but furnished assistance readily.

"Under these circumstances, I am led to the conclusion that Mrs. Hanson, in June and July, 1890, was poor and indigent, within the definitions as laid down in the statute and authorities. Rev. St. (8th Ed.) p. 2106, § 14; Knapp, N. Y. Laws of Poor, 1; Goodale v. Lawrence, 88 N. Y. 517; City of Albany v. McNamara, 117 N. Y. 168, 22 N. E. Rep. 931. This conclusion will impress itself more forcibly if we assume for the moment that under such circumstances the overseer of Danube took her over into Minden, and left her, with the avowed intention of making the latter town chargeable with her support. Would the town of Danube escape the liability by alleging that she was not indigent? I think not.

"But another essential element of plaintiff's case is that the indigent person must be removed, etc., and must be removed with intent to make the other town or county chargeable with her support. However difficult it may be to obtain a judgment in such a case, the provisions of the statute, as interpreted by the higher courts, must be followed. Rev. St. (8th Ed.) p. 2117, §§ 58, 59; Foster v. Cronkhite, 35 N. Y. 150; Cortland Co. v. Herkimer Co., 44 N. Y. 26; Coe v. Smith, 24 Wend. 341. Mrs. Hanson left her home on the day her husband died, with her children, and remained at one of the neighbor's until after the funeral, when she voluntarily went over into Minden with her children, taking her provisions and clothing with her. She sold what little property she had, and never returned to Danube, except for one day, and then to pack her remaining effects and have them taken away. There is no act in the whole transaction that is contended to be a removal, within the statute, except the act of Hyde in giving the order for

the house.  But Mrs. Hanson, at the time this order was given, had been gone from Danube more than six weeks, apparently with no intention of returning. This she had a right to do, and no liability was incurred thereby.  Foster v. Cronkhite. 35 N. Y. 150: Coe v. Smith, 24 Wend. 341.  The house hired was selected by her as the place where she wished to live.  Hyde, when he gave the order, swears he did not know the location of the house.  He asked Oeser which town it was in, and Oeser could not tell him, though he lived only two miles from the Dingman house, while Hyde lived seven or eight.  It is fair to assume that the house was near the town line, since it was only a mile from Mrs. Hanson's former home, in Danube.  It may be that Danube has furnished support for this family which it was not legally bound to furnish, so long as she went to and remained in Minden voluntarily.  If so, Minden is by so much the gainer. But such fact does not create any liability, under the statute in question.  Upon the facts proven, I fail to find any evidence showing a removal with intent to charge the town of Minden with the support of this family, even without considering the positive denial by Hyde of any such intent.  Judgment should be directed in favor of the defendant. "

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

W. B. Dunlap, for appellant.

Charles J. Palmer, for respondent.

PUTNAM, J.   This action was brought by plaintiff, as superintendent of the poor of Montgomery county, against defendant, as overseer of the poor of the town of Danube, Herkimer county, to recover expenditures made on account of one Pauline Hanson, alleged to be an indigent person, and her infant children, who, plaintiff, claimed, had been removed from Herkimer county to Montgomery county in violation of the statute. The issues in the case were whether said Pauline Hanson and her children were indigent persons, under the statute, or otherwise; and, second, were they removed by defendant or his predecessor to Montgomery county with intent to charge said county with their support?   The only questions raised are of fact.   The referee reached the conclusion that the said Pauline Hanson and her children were, within the meaning of the statute, indigent persons, but that the evidence in the case failed to establish a removal of such indigent persons from the county of Herkimer to the town of Minden, in Montgomery county, with the intent to charge said town with the support of this family.  A careful examination of the evidence in the case leads us to the conclusion that the findings of the learned referee on the questions of fact in the case are correct.   We think that his conclusions are fully sustained by the evidence, and coincide with his views as stated in his opinion.   It follows that the judgment should be affirmed, with costs.   All concur.