OPINION OF THE COURT
Anthony J. Ferraro, J.
Petitioners maintain this proceeding pursuant to CPLR article 78 for a judgment (1) declaring invalid the recoupment provision of the New York State Department of Social Services regulations and the burial policy of respondent Bates and (2) directing respondents to cease recoupment of a $275 rent advance and to provide burial assistance to petitioner of $650. Petitioner also seeks damages and counsel fees.
The individual petitioner and her six minor children receive a grant of public assistance in the category of aid to families with dependent children commonly referred to as an AFDC grant. On November 26, 1976, petitioner’s 16-year-old son was shot and killed. Petitioner had no funds to provide for the burial of her son. It became necessary for her to use her monthly grant for December as a down payment on burial expenses. On December 7, 1976, petitioner appeared at the office of the Westchester County Department of Social Services and requested assistance to pay rent and buy food for herself and children. Her request for emergency assistance was denied. Instead she was requested to sign a recoupment agreement to repay a $275 advance for rent over a six-month period. She was denied burial expenses because they exceeded $650. She was given the advance of $275 and advised that her monthly grant would be reduced by $45.83 for six months. Petitioner requested a fair hearing which was held on January 14, 1977. The determination of the local office was affirmed by the New York State Commissioner whereupon petitioner brought this proceeding.
Petitioner contends (1) that recoupment of payments in the absence of resources other than the current AFDC grant violates the Social Security Act (2) that the burial assistance policy of refusing payment when the cost exceeds $650 is arbitrary and void (3) that the refusal to provide burial expenses of a needy person is contrary to the New York State Social Services Law and (4) that petitioner was entitled to receive emergency assistance instead of an advance with recoupment.
The predicament in which petitioner found herself was triggered by the sudden death of her son and these proceed *142 ings were precipitated by the refusal of respondent Bates to grant burial assistance. The court will therefore first consider petitioner’s second and third contentions relating to the burial assistance.
The importance of providing assistance to those in our society who are less fortunate is a fundamental concept of our democratic way of life and so basic that it has been incorporated in our State Constitution. Section 1 of article XVII provides: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions and in such manner and by such means, as the legislature may from time to time determine.”
In fulfillment of the constitutional decree, the State of New York enacted sections 62, 131 (subd 1) and 141 of the Social Services Law. The latter section provides for burial expenses for the needy.
But long before the constitutional proclamation and the legislative enactment, free burials were provided for those without property. Court cases record that during the last century local town boards were paying for the burial expenses of the poor. (See Bartlett v Ackerman, 66 Hun 627, opn in 21 NYS 53.) Recorded text reveals that the Town Treasurer of Providence, Rhode Island, was ordered to pay for burial expenses of a needy person as far back as 1797 and 1798. The following notations are found in M. Creech, Three Centuries of Poor Law Administration, Select Documents Relating to the History of Poor Relief in the Colonial period, McGrath (1969 App III, p 279):
"Jan. 30, 1797 — To Squire Franklin for coffin for widow Mary Collins — $2.50.”
"Feb. 5, 1798 — To Samuel Wright for moving Mary Collins from Cunnold Potters and keeping her from 17th of December 1795 to 24th of the same month and for digging a grave and other funeral charges — $5.00.”
Even during biblical times men evinced their concern for burial of the deprived. Scripture tells us that Judas and his bride bought a potter’s field to be used as a burying place for strangers. (Matthew 27:7-8.) And for generations potter’s fields have been available for burial of those who have no friend or money.
Although the Legislature executed the constitutional man *143 date by the enactment of the provisions of the Social Services Law, the Westchester Department of Social Services in an attempt to augment those provisions has frustrated their very purpose in the promulgation of Administrative Memorandum No. 73. This memorandum formulates a policy of denying any burial assistance if the cost exceeds $650. Such a rule not only violates the intent of section 141 of the Social Services Law, but denies equal treatment to welfare recipients who cannot bury their dead. (Matter of Aleman v Lavine, 80 Misc 2d 548.) To allow a burial allowance to a needy person who is able to keep the bill down but deny it to one who is not, is an unjust punishment of the person who is not only poor but a poor negotiator as well. Such a policy bottoms the payment not upon the need but upon the ability to bargain. The purpose and function of welfare is to help the needy, not to reward the crafty or penalize the greedy. In order to pass constitutional muster and meet the equal protection requirement, the classification must be rationally based and free from invidious discrimination. (Hagans v Lavine, 415 US 528.) As was stated by the United States Supreme Court in the case of Reed v Reed (404 US 71, 76): "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.’ ”
There is no rational relationship herein between the policy adopted by respondent Bates and the purpose of the statute it was intended to supplement. The distinction made and the division created among welfare recipients of equal need is a most insidious type of invidious discrimination.
Since petitioner did not wish to have her son cremated, a choice well within her right, the hiring of an undertaker became an absolute necessity to effect compliance with State law. (Public Health Law, §§ 3421, 3456.) If the purpose of Administrative Memorandum No. 73 is to penalize an undertaker who charges more than is considered reasonable then not only is the purpose wrong, since it is not within respondent’s function or right to do so, but it will fail in its accomplishment. It is the welfare recipient who will endure the loss; not the undertaker. It is the welfare recipient who must absorb the cost while struggling for survival with diminished funds. In this very case, petitioner was required to deplete her entire December allowance for both food and shelter, never *144 received an additional allowance for food and is repaying the advance for shelter out of current food allowances.
This court previously struck down the policy of respondent Bates as enunciated by Administrative Memorandum 73. The court noted in Mendelsohn v Toia (93 Misc 2d 137): "Man does not live on bread alone. Peace of mind, tranquility of soul, satisfaction of conscience and the need to perform the duty of providing a decent burial and comfortable resting place for the mate of a lifetime are just as essential to survival on earth as food itself.”
Respondent will therefore be directed to pay $650 for burial expenses to petitioner. (Uhrovick v Lavine, 43 AD2d 481, affd 35 NY2d 892.) And the policy of respondent Bates is again declared illegal.
Petitioner’s contention that recoupment out of the AFDC grant violates the Social Security Act, uncovers a delicate dispute between State and Federal courts as to the right of recoupment. The AFDC program is governed by subchapter IV of chapter 7 of the Social Security Act (US Code, tit 42, ch 7, subch IV). That subchapter contains no authorization for the recoupment of advances by States out of AFDC grants. Petitioner argues that since Congress specifically authorized recoupment in the case of old age benefits and supplemental income payments, its failure to do so as to AFDC grants is a clear indication of its intention not to sanction it in the latter case. The overriding purpose of the Federal AFDC program is the protection of needy and dependent children. The entire thrust of the program is to insure that a child’s actual current needs are met. The child cannot be penalized for the parent’s mismanagement of the money. Many Federal authorities support these principles. (Cooper v Laupheimer, 316 F Supp 264; King v Smith, 392 US 309; Van Lare v Hurley, 421 US 338; Shea v Vialpando, 416 US 251; Lewis v Martin, 397 US 552; Bradford v Juras, 331 F Supp 167; National Welfare Rights Organization v Weinberger, 377 F Supp 861.)
The fact that the recipient signs an agreement to make repayment does not validate an otherwise unauthorized recoupment. A choice between consenting to recoupment and facing eviction is no choice at all. A promise to repay public assistance exacted under duress of pressing basic need cannot be enforced as a valid and voluntary agreement. Petitioner would have signed any paper necessary to secure shelter for herself and her family. (Gonzalez v County of Hidalgo, Texas, *145 489 F2d 1043; Hagans v Wyman, 399 F Supp 421;. Baker v Sterling, 39 NY2d 397.)
However, the New York State courts have upheld the validity of the recoupment provisions of the State regulations. In Matter of Adkin v Berger (50 AD2d 459, affd 41 NY2d 1030) the court found that the recoupment regulation was not in conflict with other Federal laws. In Matter of Reyes v Dumpson (40 NY2d 725) the Court of Appeals specifically upheld the recoupment provisions provided a single recoupment did not exceed more than 10% of household needs.
It could be forcibly argued that since a Federal program is involved, the interpretation of the Federal courts should be applied. This interpretation also seems to be more in accord with logic and reason. But a recent United States Court of Appeals case has now added to the confusion by holding that the challenged regulation is not violative of either the Social Security Act or H.E.W. regulations. (See Hagans v Berger, 536 F2d 525.) The ultimate decision of this issue will rest with the United States Supreme Court. Fortunately, this court does not reach the issue in this case. Since the $650 burial expense should have been paid and is now being ordered to be paid, the necessity for recoupment is eliminated and the balance of the advance, if any, may be deducted from the payment.
There remains for consideration, petitioner’s contention that she should have received emergency assistance without repayment instead of an advance with recoupment. Emergency assistance has been held to be payable in the case of "sudden and unexplained emergency events” and "not to remedy the anticipated demands created as the result of everyday life.” (Hagans v Berger, supra, p 532; Baumes v Lavine, 38 NY2d 296.) It has also been held that advances made to pay regular monthly rent and utility bills are not nonrecoverable emergency payments within section 350-j of the Social Services Law. (Matter of Adkin v Berger, supra.) In addition, the State regulations exclude emergency assistance when petitioner’s immediate needs can be met by an advance allowance. (See 18 NYCRR 372.2 [a] [2]; 352.7 [g] [7].) Although ordinarily the payment of rent is a demand created by everyday life, the question remains whether the sudden death of petitioner’s son created such an emergency as to justify emergency assistance. The court must consider as done that which should have been done in evaluating petitioner’s plight. The payment of the burial expense would have obviated the emer *146 gency. The death must therefore be treated as an event requiring ordinary payment of burial expense and not as an extraordinary event demanding emergency payment. It cannot be both. Nor may petitioner obtain a double recovery. The payment of the burial allowance in addition to the current grants restores petitioner to her proper status quo and provides for her all she is legally entitled to recover.
Petitioner’s request for damages and counsel fees is denied. Any damages to be recoverable must be incidental to the primary relief sought and must be such as could have been recovered on the same set of facts in a separate action. (CPLR 7806; Matter of Allen v Eberling, 24 AD2d 594; Carroll-Ratner Corp. v City Manager of New Rochelle, 36 AD2d 795.) The petition herein does not demonstrate the existence of any such damages.